UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 19-CV-11835-WGY

JACK OWENS, JEFFREY DREES, KATELYN
MURPHY, PATRICK MANOLIAN, SCOTT
MANN, and SEAN HUSSEY, on behalf of
themselves and all other similarly situated,
                  Plaintiffs,

v.

CITY OF MALDEN
              Defendants.

## PLAINTIFFS' TRIAL BRIEF

Pursuant to the Court's Order dated March 31, 2021 (Dkt. 185), and Local Rule 16.5(f),

Plaintiffs Jack Owens, Jeffrey Drees, Katelyn Murphy, Patrick Manolian, Scott Mann, and Sean

Hussey and all others who have opted in as Plaintiffs to this suit, respectfully submit this Trial

Brief, including their proposed findings of fact and rulings of law, anticipated evidence, and

anticipated witnesses, for use in the upcoming Bench Trial set to begin May 5, 2021.

    **A.**    **Proposed Findings of Fact.**

    1.    The City is a municipality located in Middlesex County, Massachusetts.

    2.    Original named Plaintiffs Jack Owens, Katelyn Murphy, Patrick Manolian, Scott
Mann and Sean Hussey are patrol officers employed by the City's Police Department.

    3.    Original named Plaintiff Jeffrey Drees is a superior officer employed by the City's
Police Department.

    4.    On February 22, 2021 the Court certified a class of plaintiffs for purposes of the
Plaintiffs' Counts I and II.  (See Transcript of Summary Judgment/Final Pretrial Hearing at Pg. 6;
February 22, 2021).

    5.    The class of Plaintiffs to this action includes patrol and superior officer police
employees of the City of Malden Police Department.

6.      The complete list of Plaintiffs including patrol and superior officer police employees of the City of Malden Police Department is:

Captain John **Amirault**
Lieutenant Patricia **Bailey**
Sergeant Richard **Barthelmes**
Stephen **Bellavia**
Stephen C. **Bellavia**
Aryton **Borges**
Daniel **Borque**
Nicole **Bowie-Pierce**
Tyler **Calhoun**
Carole **Carlin**
Sergeant Scott **Carroll**
Sergeant Michael **Casaletto**
James J. **Casella**
Lieutenant Danny **Catana**
Alison **Charpentier**
Andy **Chen**
Edmond **Choi**
Robert W. **Clemente**
Conor **Cloherty**
Kevin **Co**
David **Connolly**
Lieutenant Richard **Correale**
Sergeant Nicholas **Cox**
Jon W. **Crannell**
Sandroff **Dadaille**
John **Delaney**
Cory **D'Entremont**
Cameron **Dicarlo**
Shawn **Dillon**
Robert **DiSalvatore**
Richard **Doherty**
Russell **Donovan**
Sergeant Jeffrey **Drees**
Kevin J. **Ferrick**
Blake **Ferry**
Edward **Fitzpatrick**
Sergeant Stephen **Fitzpatrick**
Lieutenant Ryan **Fortier**
Sergeant David **Franzese**
Sergeant Jason **Froio**
Captain Marc **Gatcomb**
Salvatore **Genneti**
Sergeant Michael **Giordano**
Ever **Gomez**

Amanda **Grenier**
Christopher **Griffiths**
Phillip **Halloran**
Hassenfrantz
Trent **Headley**
Maureen **Holland**
Captain Paul **Hopkins**
Sean **Hussey**
Erik **Israelson**
Joseph **Keefe**
Sergeant John **Kelley**
Renee Nusum **Kelley**
Kevin **Killion**
Patrick **Kinnon**
Gustavo **Kruschewsky**
Jean **Lamour**
Michael **Langston**
Sergeant John **Lanni**
Kevin **Law**
George **Lopez**
Steven **Lubinger**
Lieutenant Michael **Luongo**
Lieutenant Margaret **MacDonald**
George **Mackay**
Adam **Maher**
Scott **Mann**
Patrick **Manolian**
Joseph **Martinez**
Lawrence **McGahey**
Heidi **Mccormick**
Kevin **McKenna**
Sergeant Paul **McLeod**
Elijah **McNeal**
John **Medieros**
Sergeant Peter **Mitchell**
Michelet **Montino**
Jesus **Montoya**
Stephen **Mulcahy**
Stephen **Munyon**
Katelyn **Murphy Centore**
Brian **Newnan**
Lieutenant Stephen **Noble**
Robert **O'Brien**
Jack **Owens**
Salvatore **Paci**
Michael **Polston**
Sergeant Michael **Powell**

Matthew **Quinn**
Joshua **Redmond**
Sergeant John **Reynolds**
William E. **Rowe**
Kevin **Russell**
Cameron **Selfridge**
Robert **Selfridge**
Kyle **Shaw**
Kevin T. **Sheridan**
Adam **Siegel**
Daniel **Sylva**
Brian **Tilley**
Lieutenant Evan **Tuxbury**
Robert **Wadland**
Joseph **Walker**
Charles Diaz **Washington Jr.**
Kenneth **Watkins**
Keith **Wilson**
Amanda **Yanovitch**
David **Yung**

7.     All eligible police employees, including all patrol and all superior officers, except for Police Chief Kevin Molis and Captain Glenn Cronin opted into the class of plaintiffs against the City of Malden.

### Malden Police Officers Are Not Independently Established Or Licensed Tradesmen

8.     City of Malden Police Officers are not independently established or licensed professionals or tradesmen.

9.     The City of Malden has enacted a code of ordinances and has a municipal Charter.

10.     The Charter establishes the powers of the Police Commissioner and Police Department for the City of Malden Police Department.

11.     Pursuant to the City of Malden Charter, municipal ordinance and state law, City of Malden Police officers are only sworn to exercise police powers within the City limits.[1]

12.     As Municipal Police Officers, the Plaintiffs in this case are sworn to the faithful discharge of their duties as members of the City of Malden Police Department through Malden Municipal Code 10.16.120.

13.     The lawful authority through which the City of Malden may swear members of its Police Department is derived from G.L. c. 41, § 97 authorizing the establishment of municipal

---

[1] Municipal police officers may be specially sworn in neighboring municipalities or with overlapping federal law enforcement agencies (i.e. Federal Bureau of Investigations or Drug Enforcement Agency), but that requires special legislative processes for each such which is not relevant to the claims at issue in this case.

police departments.

14.     Unlike independently established or licensed professionals or tradesmen (i.e. plumbers, electricians, real estate brokers and salespersons) who may engage in their occupation at any location in the state by virtue of their license or occupation, City of Malden Police Officers are only authorized to work as police officers within the City of Malden limits, pursuant to the Malden Municipal Ordinances, and with the approval of the Chief of Police.

15.     Officers working outside the City detail must be specially sworn in the neighboring jurisdiction to exercise police power.

**Police Details Are Required By The City's Municipal Ordinances And The Orders Of The Chief Of Police Or His Designee**

16.     Police details are required by the City of Malden.

17.     The City of Malden, through Chief Kevin Molis, testified that all police details exist for the purpose of public safety. Chief Molis specifically confirmed in his capacity as City designee and Chief of Police that all police details are for public safety purposes.

18.     The Malden Municipal Code also indicates that police details are required by City of Malden Ordinance.

19.     Specifically, the Police Chief may require a police detail or details on the premises of a licensed hotel or motel to enforce City Ordinance 6.08.050 relating to Hotel/Motel licensing.

20.     Whenever there is a gathering at a public hall or theater hosting a gathering for public or private entertainment, or any public gathering of any description at which alcoholic beverages are served or consumed is required to have a police detail with the number of officers determined by the Police Commissioner or his designee.  City Ordinance 6.16.010 requires police details in said circumstances.  A good number of the actual police details worked over the operative timeframe include these types of details.

21.     The Police Chief may require a police detail at a property creating a public nuisance pursuant to City Ordinance 10.04.010.

22.     Police details are required for any street or sidewalk occupation or obstruction which disrupts the free flow of vehicular or pedestrian traffic pursuant to 11.08.060.  This category of City required police details comprises a large portion of the details that were worked over the operative timeframe.

23.     Maintenance, installation, repair or replacement of equipment, poles and conduits shall be performed only on Monday through Saturday between the hours of 8 a.m and 9 p.m.; provided, when in the opinion of the Police Chief, a serious emergency exists such that immediate repair of equipment is necessary to preserve the public safety, work may be performed at such times and places, to such an extent and with such police details as he may permit, pursuant to City Ordinance 11.24.010.

24.     The Police Chief <u>may require</u> police details whenever any property where the grade of any required yard area is 25% or more before construction or development, or any removal or excavation of ledge or other material from any property by chipping or blasting or any other means, pursuant to City Ordinance 12.28.130.

25.     The Police Chief, Patrol Commander and Traffic Department of the City of Malden Police Department meet with third parties (i.e. National Grid, Barletta Construction) in advance of events or projects to plan the public safety aspects of the project which includes City mandated police details, the number of officers working on the detail, whether a supervisor is required, and the time and hour requirements.

26.     The Plaintiffs, individually or collectively, have absolutely no authority over municipal ordinance requirements or the requirements of the Police Chief or his designees (i.e. Patrol Commander, Officer In Charge ("OIC"), Traffic Department).

27.     The Detail Board has absolutely no authority over municipal ordinance requirements or the requirements of the Police Chief or his designees (i.e. Patrol Commander, Officer In Charge ("OIC"), Traffic Department).

28.     Third parties who are required by municipal ordinance or the Police Chief to contact the police department to arrange a police detail have no authority to act outside of municipal ordinance or the requirements of the Police Chief in this regard.

29.     In other words, a third party cannot privately hire a City of Malden Police Officer to performe a police detail, the third party must contact the City of Malden Detail Clerk or Officer in Charge to make arrangements for a police detail.

30.     Private arrangements are prohibited by the City.

31.     A police officer individually has no license or authority to require a third party to hire a paid detail officer, nor may a police officer contract with a third party to perform police protection services in the form of a police detail or otherwise.

32.     The Police Chief or his designee also orders certain details as "Priority Details." They are detail assignments in the City that, for public safety reasons, require the presence of a police officer in a way that the Police Chief wants the detail filled before any other details are filled.

33.     If a priority detail is not filled, by order of the Chief of Police or his designee, officers are not permitted to work any other detail.

34.     This is unlike any independently established or licensed professional or tradesman who may engaged in his or her occupation without the approval or permission of a superior, and who is not directed or controlled by such employer rules.

35.    The Detail Board has absolutely no authority over the Chief's Priority Detail orders, indeed, the Detail Board has absolutely no authority over any of the Chief's orders.

36.    There is no language in the Patrol CBA regarding the authority of the City's municipal ordinances or the Police Chief's inherent or expressed authority over police details.

37.    Neither the Patrol CBA nor the Detail Board have any authority over the City's municipal ordinances related to police detail requirements or the orders of the Chief of Police.

38.    Former Mayor Richard C. Howard confirms the City's authority over police details from a Mayoral level in his December 11, 2007 letter to the Malden Police Detail Board, indicating:

> Therefore, should the City be ordered to temporarily or permanently pay in a fashion different than that identified in Chapter 44, Section 53C, **I will request that the Commissioner and Chief issue an order ending the assignment of outside-the city details and all non-public safety related details in the City.**

### Police Details Are Subject To The Malden Police Department Code of Conduct, The Rules And Regulations Of The Malden Police Department, The Orders Of The Police Chief And His Designees

39.    Officers working police details are subject to the Malden Police Department Code of Conduct.

40.    The Detail Board has no authority to amend or override the Malden Police Department Code of Conduct.

41.    Third Parties have no authority to amend or override the Malden Police Department Code of Conduct.

42.    Officers working police details are subject to the Rules and Regulations for the Government of the Police Department of the City of Malden.

43.    The Detail Board has no authority to amend or override the Rules and Regulations for the Government of the Police Department of the City of Malden.

44.    Third Parties have no authority to amend or override the Rules and Regulations for the Government of the Police Department of the City of Malden.

45.    Officers working police details are subject to the Orders of the Police Chief and/or his designee, which is often the Patrol Commander.

46.    The Detail Board has no authority to amend or override the Orders of the Police Chief and/or his designee, which is often the Patrol Commander.

47.     Third Parties have no authority to amend or override the Orders of the Police Chief and/or his designee, which is often the Patrol Commander.

48.     Officers working police details are subject to the supervision of the Officer in Charge, particularly with respect to detail records.

49.     The Detail Board has no authority to amend or override the supervision of the Officer in Charge, particularly with respect to detail records.

50.     Third Parties have no authority to amend or override the supervision of the Officer in Charge, particularly with respect to detail records.

51.     Officers working police details are subject to the direct supervision of the Patrol Supervisor.  Specifically, the Rules and Regulations require the Patrol Supervisor to:

> Check all men assigned to public or paying details whether on the street or on private premises. They shall check to see that men have reported for their detail at the proper time, and shall, from time to time check to see that they are properly performing their duties.

52.     The Detail Board has no authority to amend or override the supervision of the Patrol Supervisor.

53.     Third Parties have no authority to amend or override the supervision of the Patrol Supervisor.

54.     Officers are required by Department policy to wear a uniform approved by the Chief of Police while working a police detail.

55.     The Detail Board has no authority to amend or override the Department policy to wear a uniform approved by the Chief of Police while working a police detail.

56.     Third Parties have no authority to amend or override the Department policy to wear a uniform approved by the Chief of Police while working a police detail.

57.     An officer cannot wear the clothing of his/her choosing or clothing directed by a third party hiring a detail (i.e. a suit and tie requested by the host of a gathering).

58.     Officers are required to wear their Department issued firearm, badge, radio and handcuffs while working a police detail.

59.     An officer cannot choose his/her own tools of the job (i.e. personal firearm, security badge, radio or restraints), nor can a third party direct the officer as to the same.

60.    The Detail Board has no authority to amend or override the Department requirement that officers wear their Department issued firearm, badge, radio and handcuffs while working a police detail.

61.    Third Parties have no authority to amend or override the Department requirement that officers wear their Department issued firearm, badge, radio and handcuffs while working a police detail.

62.    Officers performing a detail are considered "active."

63.    An officer working a detail must act if he or she observes criminal activity while working a paid detail.

64.    An officer working a detail must act if he or she observes a medical emergency while working a paid detail.

65.    An officer working a detail must perform the same community relations function while working a paid detail.

66.    The Chief or his designee may issue an order to an officer working a detail which the officer is required to follow.

67.    The Detail Board has no authority to amend or override the Chief's orders to an officer working a detail because he or she happens to be working a police detail.

68.    The Third Party paying for the detail has no authority to amend or override the Chief's orders to an officer working a detail because he or she happens to be working a police detail.

69.    The Detail Board does manage the fair rotation of details and hears complaints and issues punishments to officers who violate the Malden Police Department Detail Rules.

70.    The Police Chief generally does not get involved in the Detail Board's performance of this function, however, the Chief has the authority to override the Detail Board and/or issue discipline for infractions.

71.    The Chief is the only person with authority to issue discipline if an officer commits a violation of the Department Code of Conduct or Rules and Regulations while working a paid detail.

72.    The state of the Law in Massachusetts is long established and clear that a police officer working a police detail is in the performance of his/her public employment as a police officer, serving public safety while working a paid detail.  See Yates v. City of Salem, 342 Mass. 460 (1961)(granting G.L. c. 41, § 111F injured in the line of duty benefits to officer working a police detail); Politano v. Board of Selectmen, 12 Mass. App. Ct. 738 (1981)(affirming and collecting cases); Champa v. Town of Billerica, 2001 Mass. Super. LEXIS 311 (2001)(same).  The same cases make clear the fact that a third party pays for the required police detail is irrelevant. Id.

9

73.     Aside from the clear factual record establishing as such, the Massachusetts Appeals Court has confirmed as a matter of public policy that a City/Police Chief retain management rights to control personnel assignments and this right extends to the supervision and assignment of police details.  See City of Boston v. Boston Police Patrolmen's Ass'n., 41 Mass. App. Ct. 269 (1996)(vacating an arbitration award in favor of the union because public policy confers broad authority upon the City/police commissioner regarding personnel assignments, including police details).

### The City Of Malden Invoices For Police Details, It Collects Payments For Police Details And Process The Money Through The City's Employee Payroll System

74.     The Treasurer's Office of the City of Malden is ultimately responsible for the police payroll.

75.     The Rules and Regulations expressly prohibit the officers from collecting payment for police details.

76.     The Controller of the City of the Malden has the oversight responsibility of ensuring adequate funding in each city department's payroll account.

77.     This oversight responsibility extended to ensuring adequate funding existed for overtime work.

78.     Detail services are also paid through the City's payroll.

79.     The City invoices City Departments and Third Parties for paid details through its Detail Clerk, a non-unionized civilian employee.

80.     As a member of the Police Department administrative staff, the Detail Clerk reports ultimately reports to the Chief of Police or his designee.

81.     Controller Ranaghan has also provided direct supervision to the Detail Clerk when he wishes to do so.  For example, on November 15, 2019 he directed her to cease payment to officers according to the order that details were worked.

82.     Checks for paid details are paid to "City of Malden" or "Malden Police Department."

83.     The Detail Clerk sends detail payroll to the Chief's administrative staff.

84.     The Chief's administrative staff enters payroll in the City's Harper's Payroll system.

85.     The Detail Board has no authority or control over the invoicing and collection process.

86.     The Detail Board has no access to or control over the City's accounts.

87.     The Detail Board has no access to or control over the City's payroll system.

88.     The Detail Board has no access to or control over the City's funds.

89.     The Detail Board has no access to or control over the money collected as a result of police details.

90.     The Plaintiffs, individually or collectively, have no authority or control over the invoicing and collection process, including those they work personally.

91.     The Plaintiffs, individually or collectively, have no access to or control over the City's accounts, including those they work personally.

92.     The Plaintiffs, individually or collectively, have no access to or control over the City's payroll system, including those they work personally.

93.     The Plaintiffs, individually or collectively, have no access to or control over the City's funds, including those they work personally.

94.     The Plaintiffs, individually or collectively, have no access to or control over the money collected as a result of police details, including those they work personally.

95.     The Plaintiffs are prohibited by the City from collecting payment for police details.

96.     The City deducts taxes for police detail remuneration and it is separately itemized on an officers annual W-2 form issued by the City.

97.     Jack H. Owens' last paystub of 2020 (December 31, 2020) shows a gross income of $148,931.27.  Included in that gross income is $34,378.54 in Police Detail wages.  The last paystub also indicates the "Other Deductions from Pay" reflecting seven items that are to be deducted from Owens' gross wages for purpose of calculating his W2 wages, another obligation of the City's as an employer.

98.    Jack H. Owens' 2020 W2 reflects taxable wages, tips and other compensation paid by his employer, the City of Malden, in 2020 as **$119,964.77**.  Comparison to his last paystub of 2020 shows that Paid Details are included in said employer paid wages.  The math is as follows:

| Total Gross Pay (last paystub) | | $148,931.27 |
| --- | --- | --- |
| Other Deductions from Pay[2] (last paystub) | | |
| Valic GA 457(B) | | $10,600.00 |
| FSA Medical 26 | | $2,389.82 |
| FSA Fee 26 | | $73.30 |
| HMO-26 F-Reg | | $5,191.94 |
| DENTAL_Delta PPO Plus_26 | | $1,343.97 |
| ADL 2% RET | | $1,384.21 |
| RETIREMENT 8% | - | $7,983.26 |
| | | **$119,964.77** |

99.    An independently established or licensed professional or tradesmen would complete an IRS Form W9 whenever he/she worked for a different contractor and would receive an IRS Form 1099 for the payment received.

100.    In such a scenario, the independently established or licensed professional or tradesmen would perform his/her tax accounting differently than a person receiving a W2 at the end of each taxable year, being entitled to different tax deductions and write offs than a W2 employee.

### The City Of Malden Has Willfully Neglected Its Obligations To Reconcile

101.    A reconciliation of payroll is performed every pay cycle, except for the City's admitted and willful neglect to reconcile Paid Detail pay.

102.    Employees from the Controller's and Treasurer's Offices are involved in the reconciliation of payroll.

103.    Mr. Ranaghan, who testified as the City's subject matter designee on payroll matters, testified that since 2010, the City has never undertaken a process of reviewing the collective bargaining agreement, calculating the detail rate, and then reconciling the amount paid to officers for details.

104.    Mr. Ranaghan testified that the City has, in his tenure, never reconciled police detail pay.

105.    In the face of this admitted and willful neglect, the City attempts to place the blame for its payroll obligations on police officers with no duty towards payroll, no financial training or experience, no access to the necessary payroll accounts or personnel records required to adequately and lawfully process such payroll.

---

[2] Owens direct payments to life insurance premiums ("MAL – BOSTON MUTUAL_12M" and "Boston Mutual Vol Life_26 wk") and direct payment of union dues ("Police Patrolman Assoc Dues") are not tax deductible and, thus, not included in the W2 wages, tips and other compensation calculation.

106.    Notwithstanding the lack of factual support for the City's position, the defense it advances which seeks to place liability upon the plaintiffs or the Patrol or Superior Officers' Unions (including the Detail Board) is prohibited by law.  [Dkt # 144].

## The City Receives A Financial Fee For Police Details

107.    Effective no later than February 1, 2008, by the sole directive of the Mayor, the City imposed an administrative fee of ten (10%) percent to police details.

108.    Mayor Howard, who imposed the fee, did not bargain the fee with Patrol or Superior Officers' Unions.

109.    At the time Mayor Howard testified in this case, he testified that he believed the fee was being correctly charged to the contractor but that he did not take any steps to verify this belief.

110.    Though the City willfully neglected and continues to willfully neglect its obligation to reconcile police detail pay, the City ensures that it collects its full administrative fee.

111.    Between August 28, 2016 and June 30, 2017, the City collected $193,795.50 in detail administrative fees.

112.    Between July 1, 2017 and June 30, 2018, the City collected $291,178.65 in detail administrative fees.

113.    Between July 1, 2018 and June 30, 2019, the City collected $882,103.25 in detail administrative fees.

114.    Between July 1, 2019 and June 30, 2020, the City collected $340,097.27 in detail administrative fees.

115.    Between July 1, 2020 and the current date, the City collected $316,859.72 in detail administrative fees.[3]

---

[3] Failing to recognize the import of its frivolous and retaliatory litigation created arguments (i.e. "the City learned for the first time that the rates established and published by the Detail Board and paid to officers working paid details (whether City details or Private details) are substantively higher than the rates prescribed by the Patrol CBA.  Hence, as a result of the Detail Board's actions, Plaintiffs were consistently overpaid for details that they worked throughout the period of time at issue in this litigation, relative to the rates prescribed by the governing contract." [Dkt # 197 at Pg. 6]), the City continues to neglect its obligations as a municipal employer and municipality which invoices and collects financial payments from third parties paid to the "City of Malden" for police details.  **These are the City's fiduciary obligations.**  The City's argument is completely without factual support. The City's own 30(b)(6) designee's testimony on the Patrol CBA, Police Chief Kevin Molis, supports the Plaintiffs' rate calculations.  Hence, the Plaintiffs expect at trial that the City will attempt to explicitly and implicitly to discredit their own subject matter designee on the Patrol CBA, because of the prejudice that his testimony has upon the defense.  Except, not only has the Chief testified consistent with the Plaintiffs' positions but the known history of paid detail calculations supports the Plaintiffs' claims. They have always been tied to the hourly rate of the highest paid patrolmen. Further, throughout his entire tenure as City Controller, Mr. Ranaghan received a spreadsheet from the City's Detail Clerk on a bi-weekly basis which specifically

## The Paid Detail Rate Is Clear And Unambiguous

116.  The Patrol Union is the exclusive bargaining agent for patrol officers employed by the City.

117.  The Superior Officer's Union is the exclusive bargaining agent for superior officers employed by the City.

118.  The Patrol Union, on behalf of all patrol officers, entered into a collective bargaining agreement with the City that governs the terms and conditions of compensation for all of the City's patrol officers (the "Patrol CBA").

119.  The Patrol CBA in effect as of the date of trial was executed on May 21, 2019 by the Named Plaintiffs in their capacities as elected representatives of the Patrol Union: President (Owens), Vice President (Manolian), Treasurer (Drees), Secretary (Murphy), and Delegates (Hussey, Mann).

120.  The previous fully integrated Patrol CBA that was in effect was executed in January 1997.

121.  The Patrol CBA controlled the rate for paid details for all patrol and superior officers at all times prior to July 1, 2020.

122.  The Patrol CBA continues to control the rate for paid details for all patrol officers to the present time.

123.  Effective July 1, 2020, the Superior Officers Union executed a Memorandum of Understanding between their union, MassCOP Local 479, and the City which establishes a different rate of pay for all paid details for superior officers as of April 1, 2021.

124.  The Plaintiffs who are superior officers do not contend that the paid detail rate they have been paid for details performed after April 1, 2021, which has been paid pursuant to the superior's new rate of $66, is a violation of the Massachusetts Wage Act.

125.  Of note, the City has corrected the ten percent fee for superior officers only and as of April 1, 2021, and, for that group only, now correctly charges it to the contractor and not the superior officer performing the detail. They have made this correction despite the fact that there is no language in the MOA which delineates this correction.

126.  In the process of proposing the new superior officers paid detail rate, the City proposed paying details hired by the City of Malden at the officer's applicable overtime rate to correct the clear and willful FLSA violations that were occurring before the City entered into the superiors current Memorandum of Agreement.

---

listed the dollar rate amounts invoiced. For him/the City to claim that they "just learned" of these "substantially higher" rates is an admission of willful neglect. Particularly given the fact that the City has deposited $2,024,034.39 into the City's general funds as a result of the ten percent fee it collected as a result of police details, amounts which would also be substantially overcharged to third parties if the City's litigation created defense had any merit.

127.    Thus, as of <u>April 1, 2021 and for the plaintiffs who are superior officers only</u>, the City has corrected the FLSA issue from <u>April 1, 2021</u> onward, as it relates to superior officers only.

128.    This does not change the fact that violations occurred with respect to the plaintiffs who are superior officers prior to <u>April 1, 2021</u>.  The City's correction must be viewed as an admission.

129.    This does not change the fact that violations occurred and continue to occur with respect to plaintiffs who are patrol officers.

130.    With respect to patrol officers whose applicable overtime rate was/is higher than the paid detail rate paid, when the City of Malden hired one such patrol officer for a paid detail and paid a rate below that officer's overtime rate, the City violated the FLSA.

131.    No similar correction has been made for the plaintiffs who are patrol officers.

132.    The most recent Patrol CBA and the 1997 Patrol CBA both contain the following rate setting language:

> The base rate for paid details shall be one and one half times the maximum patrolman's rate of pay including night differential.

(Article 23, § 3).

133.    The City also funds and maintains a separate line item in the police budget each July 1 in the amount of $100,000 to be used to timely pay a patrolman for details performed in the event a vendor does not pay within fourteen (14) days of the detail being performed.

134.    The Plaintiffs sought through discovery the testimony of the City on the subject matter of the Collective Bargaining Agreement.

135.    The City designated Chief of Police Kevin Molis as the subject matter expert regarding the Patrol CBA.[4]

---

[4] The City designated the Chief on the following topics:

> 5.    Collective bargaining negotiations with the Malden Police Patrolmen's Association and the Superior Officers' Union.
> 6.    The Collective Bargaining Agreement between the City of Malden and the Malden Police Patrolmen's Association.
> 7.    Orders regarding priority details within the City of Malden Police Department.

136.  Chief Molis testified "it's [the detail rate] always been time and a half the highest patrolman."  Specifically testifying:

> "[T]he guide that I'm aware of is the highest paid police officer and there are different things that have been acquired over the years that have been part of that calculation, as you said, things like the Quinn Bill, things like longevity or what have you.  So what they all are – I don't know what they all are, specifically, but I do know that they all are combined as ingredients to a final product, for want of a better word [in calculating the final detail rate.]"

137.  The City, through Chief Molis, very clearly testified that Quinn is included in the detail rate calculation.

138.  The City, through Chief Molis, very clearly testified that longevity is included in the detail rate calculation.

139.  Yet, the City's attorneys have attempted to explicitly and implicitly discredit Chief Molis' testimony because his testimony supports the Plaintiffs' claims.

140.  Specifically, the City's Trial Brief suggests that the rate calculation does not include Quinn or Longevity despite the City's (Chief's) clear testimony that it does include both items.[5]

141.  Indeed, as Chief Molis testified, the paid detail rate includes any "ingredients" that go into the hourly rate of the highest paid patrolman.

142.  The rate invoiced for paid details, but for the City's failure to appropriately charge the fee to the third parties paying for the detail, has tracked the language and Chief Molis' explanation of the language for all known years.

---

[5] This exact scenario has recently played out in Ellicott v. American Capital Energy, Inc., 906 F.3d 164 (1st Cir. 2018). The plaintiff in Ellicott, who brought a Wage Act claim against his employer, utilized Fed. R. Civ. P. 30(b)(6) in discovery and took the employers deposition regarding the topic of the plaintiff's employment contract.  The employer designated a witness who provided testimony at the 30(b)(6) deposition regarding the interpretation of the employment contract, specifically the commission split language at issue in the case.  At the time of trial, the defendant employer sought to elicit testimony which conflicted with its own 30(b)(6) witnesses previous sworn testimony, seeking to create a factual dispute regarding the commission split language and the amount of commissions owed.  The plaintiff filed a motion in limine to prohibit the defendant employer from doing so and the court granted the plaintiff's motion.  The First Circuit upheld the ruling specifically finding:

> The district court, in a well-reasoned and narrowly tailored Memorandum and Order, properly excluded Appellants' extrinsic evidence related to the unambiguous terms of Ellicott's 2008 compensation plan on grounds that it could have confused the issues and misled the jury. Furthermore, the district court prudently disregarded the eleventh-hour affidavits from unannounced witnesses that Appellants intended to introduce six days before trial. **Not only were these offered late without a reasonable excuse for delay, but they also contradicted prior Rule 30(b)(6) deposition testimony from the individual defendants themselves.** See Thibeault v. Square D Co., 960 F.2d 239, 247 (1st Cir. 1992) ("We think it is beyond dispute that an eleventh-hour change in a party's theory of the case can be equally harmful, perhaps more harmful, from the standpoint of his adversary.").

Ellicott v. Am. Capital Energy, Inc., 906 F.3d 164, 172 (1st Cir. 2018).

**The Timing Of Paid Detail Rate Increases Is Clear And Unambiguous**

143.    The most recent Patrol CBA and the 1997 Patrol CBA both contain the following rate timing language:

> The Detail Rate will be increased as of the date the pay increases hereunder are funded by the City.  No new categories for which now pay in excess of 1.5 times the maximum patrolmen's rate of pay will be approved or voted by members of this unit without approval of the Mayor.

(Article 23, § 12 of current Patrol CBA)
(Article 23, § 13 of 1997 Patrol CBA)

144.    The City funded a pay increase for wages under the Patrol CBA in the October 21, 2016 pay period.  The pay increase is reflected in Edward J. Fitzpatrick's October 21, 2016 paystub (compare October 14, 2016 for change).

145.    The City funded a pay increase for wages under the Patrol CBA in the January 13, 2017 pay period.  The pay increase is reflected in Edward J. Fitzpatrick's January 13, 2017 paystub (compare January 6, 2017 for change).

146.    The City funded a pay increase for wages under the Patrol CBA in the February 23, 2018 pay period.  The pay increase is reflected in Edward J. Fitzpatrick's February 23, 2018 paystub (compare February 16, 2018 for change).

147.    The City funded a pay increase for wages under the Patrol CBA in the July 12, 2019 pay period.  The pay increase is reflected in Trent J. Headley's July 12, 2019 paystub (compare July 5, 2019 for change).

148.    The City funded a pay increase for wages under the Patrol CBA in the July 17, 2020 pay period.  The pay increase is reflected in Jack H. Owens' July 17, 2020 paystub (compare July 2, 2020 for change).

149.    The Paid Detail rate should have been increased at the same time the City funded these pay increases but was not.

## The City Paid Incorrect Rates

150.  The City paid the following rates over the following time periods[6]:

| | |
|---|---|
| August 28, 2016 to July 28, 2017 | $50.31 |
| July 29, 2017 to September 28, 2019 | $56.09 |
| September 29, 2019 to current | $59.92 |

## The Correct Detail Rates

151.  As indicated above, Article 23, § 3 states:

> The base rate for paid details[7] shall be one and one half times the maximum patrolman's rate of pay including night differential.

152.  The City's 30(b)(6) testimony reflects that base rate for paid details includes any "ingredients" (i.e. Quinn, Longevity, Hazardous Duty) that have been acquired over the years that go into the hourly rate of the highest paid patrolman.

153.  The City's 30(b)(6) testimony is consistent with the FLSA hourly rate calculation requirements. See O'Brien v. Town of Agawam, 350 F.3d 279, 297 (1st Cir. 2003)(Longevity and Quinn required by FLSA).  Any types of pay in the Patrol CBA that is a non-discretionary payment and which does not fall within the exclusions of 29 C.F.R. 778.200 must be included in the hourly rate calculation.  Id.

154.  The City performed these rate calculations in calculating overtime rates over the operative period.

155.  The parties agree that Edward J. Fitzpatrick, Trent J. Headley and Jack H. Owens were/are the highest paid officers over the operative timeframes.

156.  The City calculated the following overtime rates over the operative timeframes:

---

[6] Except as detailed above with respect to the changes made for superior officer plaintiffs through Superior Officers recent MOA.  The City continues its attempts to blame the two unions or the Detail Board for the incorrect rates.  The record does not show that the Detail Board controlled the rates, and even if they had exercised any actual control over the rate it does not change the City's contractual, legal, and fiduciary obligations as a municipality and employer. Further, the City's factual argument in this regard  is a reiteration of the City's attempt to implead the Unions as third party defendants, which this Court correctly found to be prohibited by law. [Dkt # 144].

[7] Chief Kevin Molis and Captain John Amirault both testified that the Supervisor Rate, Holiday Rate, in excess of eight hours rate, night detail and Strike Rate for Paid Details, are categories which have been in existence for their entire time on the job, at least forty (40) years.  Further, the Patrol CBA refers to the Article 23, § 3 rate as the "base rate for paid details" and Article 23, § 12 further references the existence of these additional categories in stating:

> No new categories for which now pay in excess of 1.5 times the maximum patrolmen's rate of pay will be approved or voted by members of this unit without approval of the Mayor.

(Article 23, § 12 of Patrol CBA).  This same language is also in the 1997 Patrol CBA.

| Operative Timeframes[8] | City Calculated Overtime Rate Of Highest Paid Patrolman[9] |
|---|---|
| August 28, 2016 to October 14, 2016 | $55.91 |
| October 21, 2016 to January 6, 2017 | $60.80 |
| January 13, 2017 to February 16, 2018 | $61.70 |
| February 23, 2018 to July 5, 2019 | $63.25 |
| July 12, 2019 to July 2, 2020 | $65.91 |
| July 17, 2020 to present | $67.99 |

157.   Edward J. Fitzpatrick September 9, 2016 paystub **(exemplar of August 28, 2016 to October 14, 2016 period)** shows that the City's overtime rate calculation includes the following ingredients <u>Quinn</u>, <u>Longevity</u>, and <u>Night Shift Differential</u>.

158.   The City calculated Edward J. Fitzpatrick's overtime rate as $55.91, which calculation was performed by the City.

159.   The math is reflected as follows:

|  | Hours | Amount |
|---|---|---|
| Regular | 40.00 | $1,061.58 |
| Shift Differential Police |  | $53.08 |
| Quinn (25%) |  | $278.66 |
| POLP Sr. Longevity |  | $97.53 |
|  |  | $1,490.85 |
|  | ÷ | 40.00 hours |
|  |  | $37.27/hr |
|  | x | 1.5 |
|  |  | $55.91/hr |

160.   Edward J. Fitzpatrick's November 18, 2016 paystub **(exemplar of October 21, 2016 to January 6, 2017 period)** shows that the City's overtime rate calculation includes the following ingredients <u>Quinn</u>, <u>Longevity</u>, and <u>Night Shift Differential</u>.

161.   The City calculated Edward J. Fitzpatrick's overtime rate as $60.80, which calculation was performed by the City.

---

[8] The timeframes are established by the Patrol CBA's rate timing language, as discussed above.
[9] The foregoing paragraphs show the evidentiary source of the City calculated overtime rates of the highest paid patrolman that are contained within this chart.

162. The math is reflected as follows:

|  | Hours | | Amount |
|---|---|---|---|
| Regular | 40.00 | | $1,149.09 |
| Shift Differential Police | | | $63.20 |
| Quinn (25%) | | | $303.07 |
| POLP Sr. Longevity | | | $106.08 |
| | | | $1,621.44 |
| | | ÷ | 40.00 hours |
| | | | $40.54/hr |
| | | x | 1.5 |
| | | | $60.80/hr |

163. Edward J. Fitzpatrick's January 13, 2017 paystub **(exemplar of January 13, 2017 to February 16, 2018 period)** shows that the City's overtime rate calculation includes the following ingredients <u>Quinn</u>, <u>Longevity</u>, and <u>Night Shift Differential</u>.

164. The City calculated Edward J. Fitzpatrick's overtime rate as $61.70, which calculation was performed by the City.

165. The math is reflected as follows:

|  | Hours | | Amount |
|---|---|---|---|
| Regular | 40.00 | | $1,160.58 |
| Shift Differential Police | | | $69.63 |
| Quinn (25%) | | | $307.55 |
| POLP Sr. Longevity | | | $107.64 |
| | | | $1,645.40 |
| | | ÷ | 40.00 hours |
| | | | $41.14/hr |
| | | x | 1.5 |
| | | | $61.70/hr |

166. Edward J. Fitzpatrick's June 8, 2018 paystub **(exemplar of February 23, 2018 to July 5, 2019 period)** shows that the City's overtime rate calculation includes the following ingredients <u>Quinn</u>, <u>Longevity</u>, and <u>Night Shift Differential</u>.

167. The City calculated Edward J. Fitzpatrick's overtime rate as $63.25, which calculation was performed by the City.

168.   The math is reflected as follows:

|  | Hours | | Amount |
|---|---|---|---|
| Regular | 40.00 | | $1,189.59 |
| Shift Differential Police | | | $71.38 |
| Quinn (25%) | | | $315.24 |
| POLP Sr. Longevity | | | $110.33 |
| | | | $1,686.54 |
| | | ÷ | 40.00 hours |
| | | | $42.16/hr |
| | | x | 1.5 |
| | | | $63.25/hr |

169.   The Patrol CBA added Hazardous Duty pay as of July 1, 2019 and appears itemized in the patrol officers' paychecks as of the first pay period after that date, which is July 5, 2019.

170.   Trent J. Headley's August 16, 2019 paystub **(exemplar of July 12, 2019 to July 2, 2020 period)** shows that the City's overtime rate calculation includes the following ingredients Quinn, Longevity, Hazardous Duty and Night Shift Differential.

171.   The City calculated Trent J. Headley's overtime rate as $65.91, which calculation was performed by the City.

172.   The math is reflected as follows:

|  | Hours | | Amount |
|---|---|---|---|
| Regular | 40.00 | | $1,212.10 |
| Shift Differential Police | | | $72.73 |
| Quinn (25%) | | | $321.21 |
| POLP Hazardous Duty | | | $39.13 |
| POLP Sr. Longevity | | | $112.42 |
| | | | $1,757.59 |
| | | ÷ | 40.00 hours |
| | | | $43.94/hr |
| | | x | 1.5 |
| | | | $65.91 |

173.   Jack H. Owens' July 31, 2020 paystub **(exemplar of July 17, 2020 to present period)** shows that the City's overtime rate calculation includes the following ingredients Quinn, Longevity, Hazardous Duty and Night Shift Differential.

174.   The City calculated Jack H. Owens' overtime rate as $67.99, which calculation was performed by the City.

175. The math is reflected as follows:

|  | Hours | Amount |
|---|---|---|
| Regular | 80.00 | $2,472.68 |
| Shift Differential Police | | $148.36 |
| Quinn (25%) | | $655.26 |
| POLP Hazardous Duty | | $87.88 |
| POLP Sr. Longevity | | $262.10 |
| | | $3,626.28 |
| ÷ | | 80.00 hours |
| | | $45.33/hr |
| x | | 1.5 |
| | | $67.99 |

176.    The Patrol CBA establishes that the workweek applicable to all patrol officers runs from 7:00 am on Saturday through 6:59 am the following Saturday.  Patrol CBA, Art. 15, § 5.

### The Categories (i.e. Supervisor Rate, Strike Rate) Have Existed For Over Forty Years And Are Referenced In Article 23 The Patrol CBA

177.    The Malden Police Detail Rules and Regulations enumerate a Supervisor Rate, rate for detail hours in excess of eight hours, Night Rate, Holiday Rate and a Strike Rate for Paid Details, categories which have been in existence for at least forty (40) years.

178.    The Supervisor Rate, rate for detail hours in excess of eight hours, Night Rate, and Holiday Rate is one and one half times the detail rate.

179.    The Strike Rate is two times the detail rate.

180.    These rates have been invoiced and paid by the City for at least forty (40) years.

181.    The Patrol CBA refers to these multiplier rates by reference.

182.    Article 23, § 3 states the following:

The **base rate for paid details** shall be one and one half times the maximum patrolman's rate of pay including night differential.

(Article 23, § 3)(emphasis added).  Clearly referring to the existence of the multiplier rates.

183.    Article 23, § 12 states the following:

The Detail Rate will be increased as of the date the pay increases hereunder are funded by the City.  **No new categories for which now pay in excess of 1.5 times the maximum patrolmen's rate of pay** will be approved or voted by members of this unit without approval of

the Mayor.

(Article 23, § 12 of current Patrol CBA; see also Article 23, § 13 of 1997 Patrol CBA) (emphasis added). Again, clearly referring to the existence of the multiplier rates.

184.    The Chief testified to the existence of the multiplier rates.

185.    All police witnesses, including a police captain with over forty years tenure, all testify consistently with the Chief regarding the existence of the multiplier rates.

186.    The City's spreadsheet and payroll records all reflect the existence of the multiplier rate.

187.    The City recently memorialized the multiplier rates explicitly in the Superior Officers new MOA.

188.    The multiplier rates as described therein all existed prior to the MOA.

189.    The City's contention that "the Patrol CBA does not contemplate or mention different detail rates for details worked from 12:00 am – 7:00 am, details in excess of 8 hours, details worked on holidays, or strike details" requires we ignore large portions of the language of Article 23 on Paid Details. See American Lease Ins. Agency Corp. v. Balboa Capital Corp., 579 F.3d 34, 44 (1st Cir. 2009)(In construing a contract, one of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless).

190.    The City's Trial Brief does not mention the Supervisor Rate multiplier.

## The City Has Violated The FLSA

191.    Plaintiffs respectfully request this Court declare that the City violated the FLSA anytime an officer performed a detail hired by the City of Malden and the City paid that officer a rate that was less than one- and one-half times that officer's hourly rate of pay.

192.    On September 29, 2016, Cpt. John Amirault worked a four hour City Detail.  He was paid $50.32 per hour.  As reflected in his Time Card (Week 9 of 2016 [pg. 5 of 364]), he worked a forty hour work week.  At the time, his overtime rate was $93.67.  The City violated the FLSA by paying him a rate below his FLSA required overtime rate.

193.    The City also violated the Massachusetts Wage Act by not paying Cpt. Amirault for the September 29, 2016 City Detail until October 21, 2016.  The Wage Act requires payment within six days of the pay period in which the wage were earned.

194.    On April 12, 2017, Cpt. John Amirault worked a four hour City Detail.  He was paid $50.32 per hour.  As reflected in his Time Card (Week 15 of 2017-1 [pg. 7 of 402]), he worked a forty hour work week.  At the time, his overtime rate was $97.35.  The City violated the FLSA by paying him a rate below his FLSA required overtime rate.

195.   The City also violated the Massachusetts Wage Act by not paying Cpt. Amirault for the April 12, 2017 City Detail until May 5, 2017.  The Wage Act requires payment within six days of the pay period in which the wage were earned.

196.   On August 2, 2017, Cpt. John Amirault worked a four hour City Detail.  He was paid $56.09 per hour.  As reflected in his Time Card (Week 5 of 2017-2 [pg. 5 of 440]), he worked a forty hour work week.  At the time, his overtime rate was $97.35.  The City violated the FLSA by paying him a rate below his FLSA required overtime rate.

197.   The City also violated the Massachusetts Wage Act by not paying Cpt. Amirault for the August 2, 2017 City Detail until August 25, 2017.  The Wage Act requires payment within six days of the pay period in which the wage were earned.

198.   On February 2, 2018, Cpt. John Amirault worked a four hour City Detail.  He was paid $56.09 per hour.  As reflected in his Time Card (Week 5 of 2018-1 [pg. 5 of 412]), he worked a forty hour work week.  At the time, his overtime rate was $97.35.  The City violated the FLSA by paying him a rate below his FLSA required overtime rate.

199.   The City also violated the Massachusetts Wage Act by not paying Cpt. Amirault for the February 2, 2018 City Detail until March 9, 2018.  The Wage Act requires payment within six days of the pay period in which the wage were earned.

200.   On July 10, 2019, Cpt. John Amirault worked a four hour City Detail.  In the same week, on July 12, 2019, he worked another four hour City Detail.  He was paid $56.09 per hour for both.  As reflected in his Time Card (Week 2 of 2019-2 [pg. 5 of 460]), he worked a thirty-four hour work week otherwise, resulting in two hours over forty.  At the time, his overtime rate was $103.61.  The City violated the FLSA by paying him a rate below his FLSA required overtime rate.

201.   The City also violated the Massachusetts Wage Act by not paying Cpt. Amirault for the July 10 and 12, 2019 City Details until August 9, 2019.  The Wage Act requires payment within six days of the pay period in which the wage were earned.

202.   On May 8, 2020, Cpt. John Amirault worked a four hour City Detail.  He was paid $59.92 per hour.  As reflected in his Time Card (Week 22 of 2020-1 [pg. 8 of 411]), he worked a forty hour work week otherwise.  At the time, his overtime rate was $103.61.  The City violated the FLSA by paying him a rate below his FLSA required overtime rate.

203.   The City also violated the Massachusetts Wage Act by not paying Cpt. Amirault for the May 8, 2020, City Details until May 29, 2020.  The Wage Act requires payment within six days of the pay period in which the wage were earned.

204.   On January 29, 2021, Cpt. John Amirault worked a four hour City Detail.  In the same week, on January 31, 2021, he worked another four hour City Detail.  He was paid $59.92 per hour for both.  As reflected in his Time Card (Week 5 of 2021-1 [pg. 1 of 253]), he worked a thirty-five hour work week otherwise, resulting in three hours over forty.  At the time, his overtime rate was $103.61.  The City violated the FLSA by paying him a rate below his FLSA required overtime rate.

205.   The City also violated the Massachusetts Wage Act by not paying Cpt. Amirault for the January 29 and 31, 2021 City Details until February 26, 2021.  The Wage Act requires payment within six days of the pay period in which the wage were earned.

206.   The City's violations of the FLSA occurred each and every time the City ordered a police detail, whenever the officer worked in excess of forty hours and was paid at a rate less than his/her time and a half rate.

207.   The City also claims in this case that it did not charge an admin fee on City Details, a claim which is not reflected in any of the record evidence.  The amounts paid to officers working details ordered by the City is the same as the reduced amount paid to officers working details ordered by third parties.  (See e.g. "Details pd 102816 100416-100916.xlsx" reflecting the details paid by the City in the October 28, 2016 pay period).  The October 28, 2016 exemplar shows that John Amirault was paid a reduced rate of $50.32/hour for the City and for the third party, without differentiation.

### The City's Violations Of The FLSA Were Willful

208.   The City has been involved in previous litigation with the police unions regarding the subject of police details going back to the time when Mayor Howard imposed the ten percent (10%) administrative fee.

209.   Municipal and state law require annual audits of all municipal accounts, which includes payroll and any other account the City uses to deposit monies collected as a result police details.

210.   The City is the keeper of records for the Detail Hours Spreadsheets admitted into evidence, the payroll records that are in evidence, the timecards that are in evidence, and the collective bargaining agreements that are in evidence.

211.   The City has received specific requests from members of the Department, specifically Cpt. John Amirault, to pay the actual overtime rate instead of the detail rate for City Details as early as November 9, 2015.

212.   A prior lawsuit had been filed by the Malden Patrolman's Association against the City of Malden in Middlesex Superior Court regarding the timeliness of payment of detail wages. See Malden Police Patrolman's Association v. City of Malden, 92 Mass. App. Ct. 53 (2017).

213.   Regardless of the City's ongoing legal obligations regarding the accuracy of its municipal accounts, the prior lawsuit reasonably should have caused the City to specifically examine its compliance with the Massachusetts Wage Act and Fair Labor Standards Act as it relates to police details.

214.   On September 16, 2019, a letter was directed to the City from Plaintiffs counsels specifically identifying the issues of this case.

215.   The City did not take any steps to rectify the issue raised despite the clear violations of both the Massachusetts Wage Act and the Fair Labor Standards Act.

216.   On March 2, 2021, the City entered into a Memorandum of Understanding with the superior officers union, MassCOP Local 479.

217.   The MOU memorializes a City proposal to the superior officers union to finally correct the FLSA violation which was occurring and which the City was on notice of as of at least November 9, 2015.

218.   Specifically, the City proposed paying the superior officers actual time and a half rate for details ordered by the City, which ensures that the City will not be in violation of the FLSA, as demonstrated herein, when the superior officer works a City Detail and otherwise works forty hours in that same workweek.

219.   The City's failure to comply with the requirements of the FLSA with respect to all officers prior to March 2, 2021 was very clearly willful.

220.   The City's past and continuing failure to comply with the FLSA with respect to patrol officers is as a result of the same willful neglect of police detail payroll.

221.   Indeed, the City's designee on the topic of payroll was Charles Ranaghan, City Controller.

222.   The City designated Mr. Ranaghan on the following topics:

    1.    Management and administration of the City of Malden's Police Department Payroll.
    2.    Management and administration of the City of Malden's General Fund.
    3.    Deposits into the City of Malden's General Fund of the administrative fee amounts collected by the City as a result of Police Paid Details.

223.   As the Controller and City 30(b)(6) designee to testify as the City, Mr. Ranaghan testified that since 2010, the City has never undertaken a process of reviewing the collective bargaining agreement, calculating the detail rate, and then reconciling the amount paid to officers for details.

224.    Despite the legal obligations imposed upon the City Treasurer and Controller by municipal code, state and federal law, the actual testimony of the City is that it intentionally ignored police detail payroll.

Count I:  FLSA

225.    Declare that the City violated the FLSA anytime an officer who worked forty hours in a workweek performed a detail ordered by the City of Malden and the City paid that officer a rate that was less than one- and one-half times that officer's hourly rate of pay.

226.    Declare the violations have occurred as a result of the City's willful disregard of its pay obligations under the FLSA, which is applicable to all members of the class within the perimeters set by the Court's aforementioned declaration.

227.    Declare that the City has not acted in good faith.

Count II: Massachusetts Wage Act[10]

228.    Declare the base Paid Detail rate for each fiscal year since August 28, 2016 as follows:

| Operative Timeframes[11] | City Calculated Overtime Rate Of Highest Paid Patrolman[12] |
|---|---|
| August 28, 2016 to October 14, 2016 | $55.91 |
| October 21, 2016 to January 6, 2017 | $60.80 |
| January 13, 2017 to February 16, 2018 | $61.70 |
| February 23, 2018 to July 5, 2019 | $63.25 |
| July 12, 2019 to July 2, 2020 | $65.91 |
| July 17, 2020 to present | $67.99 |

229.    Declare that the City violated the Massachusetts Wage Act by unlawfully reducing a contractual wage each and every time it issued payment of paid detail wages to a Plaintiff below the rates declared by Request (1) for any and all details ordered by third parties that were not midnight to 6am details, supervisory rate details, detail hours worked in excess of eight hours, and/or strike rate details.  See Fraelick v. PerkettPR, Inc., 83 Mass. App. Ct. 698, 699 (2013) (under the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, an employer may not reduce employee wages).

---

[10] Defendant has waived the affirmative defense that it first raises in its trial brief, that the Plaintiffs cannot assert a private right of action under the Wage Act without first seeking permission of the Attorney General.  (See [Dkt # 197 at pg. 10, par. 16]).  Not only is it a waived the defense but the City's statement is an incorrect statement of law.  The Supreme Judicial Court answered the exact question in Depianti v. Jan-Pro Franchising Int'l, Inc., 465 Mass. 607, 614 (2013) on a referred question.  First, the SJC found that AG permission was not a jurisdictional bar to a private Wage Act claim, as the City attempts to claim here. Id.  Next, the SJC affirmed that the decision of United States District Court for the District of Massachusetts' that the defendant loses whatever defense it may have provided by failing to waive the issue was correct with regard to waiver of the exact defense the City now seeks to raise for the first time at trial. Id.

[11] The timeframes are established by the Patrol CBA's rate timing language, as discussed above.

[12] The foregoing paragraphs show the evidentiary source of the City calculated overtime rates of the highest paid patrolman that are contained within this chart.

230.    Declare that the City violated the Massachusetts Wage Act each and every time it issued payment of paid detail wages to a Plaintiff working a detail between midnight to 6am, a supervisory detail, and/or for any detail hours worked in excess of eight hours, at a rate less than one and one-half times the base paid detail rate as declared by Request (1).  See Fraelick v. PerkettPR, Inc., 83 Mass. App. Ct. 698, 699 (2013) (under the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, an employer may not reduce employee wages).

231.    Declare that the City violated the Massachusetts Wage Act each and every time it issued payment of paid details wages to a Plaintiff working a strike detail at a rate less than twice the base paid detail rate as declared by Request (1). See Fraelick v. PerkettPR, Inc., 83 Mass. App. Ct. 698, 699 (2013) (under the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, an employer may not reduce employee wages).

232.    Order mandatory treble damages, payment of costs and attorneys fees. Gibbs v. Archie, 2002 Mass. App. Div. 205, 2002 Mass. App. Div. LEXIS 82 (Mass. App. Div. 2002).

233.    Order twelve percent (12%) per annum prejudgment interest on the Plaintiffs actual damages under the Massachusetts Wage Act.  Carranza v. Unique Auto Detail LLC, Civil Action No. 15-14020-FDS, 2017 U.S. Dist. LEXIS 90588, at *1 (D. Mass. June 13, 2017).

234.    Declare that the City must collect its administrative fee, if it so elects to collect a fee at all, from the person paying for the private detail pursuant to the clear language of G.L.c. 44, § 53C.[13]

## A.    Proposed Witnesses to be Called by the Plaintiffs.

Below is a list of the witnesses that the City anticipate calling as part of its case in chief,

basedon its current understanding of this case and the shape of trial:

1.    Richard Howard, former Mayor, City of Malden, 40 Hawthorne Street, Malden, MA 02148, (781) 322-0367.

2.    Mayor Gary Christensen, City of Malden, 215 Pleasant St., Malden, MA 02148, (781) 397-7000.

---

[13] G.L. c. 44, § 53C states in relevant part:

> A city, town or district may establish a fee not to exceed ten per cent of the cost of services authorized under this section, which shall, except in the case of a city, town, district or the commonwealth, be paid by the persons requesting such private detail.

3.      Charles Ranaghan, individually as the Controller of the City of Malden and as the City's designated witness on the topics he has previously provided testimony on as the City's 30(b)(6) designee[14], 215 Pleasant St., Malden, MA02148, (781) 397-7000.

4.      Police Chief Kevin Molis. Individually as the Police Chief of the City of Malden and as the City's designated witness on the topics he has previously provided testimony on as the City's 30(b)(6) designee[15], City of Malden, 800 Eastern Ave., Malden, MA 02148,(781) 397-7171.

5.      Margaret (Mardie) Sullivan, Detail Clerk, City of Malden Police Department, 800 Eastern Ave., Malden, MA 02148, (781) 397-7170.

6.      Captain John Amirault, City of Malden Police Department, 800 Eastern Ave., Malden, MA 02148, (781) 397-7171.

7.      Captain Paul Hopkins, City of Malden Police Department, 800 Eastern Ave., Malden, MA 02148, (781) 397-7171.

8.      Officer Jack Owens, City of Malden Police Department, 800 Eastern Ave., Malden, MA 02148, (781) 397-7171.

9.      Sergeant Steven Fitzpatrick, City of Malden Police Department, 800 Eastern Ave., Malden, MA 02148, (781) 397-7171.

10.    Officer Brian Tilley, City of Malden Police Department, 800 Eastern Ave., Malden, MA 02148, (781) 397-7171.

---

[14] The City designated Mr. Ranaghan on the following topics:

1.      Management and administration of the City of Malden's Police Department Payroll.
2.      Management and administration of the City of Malden's General Fund.
3.      Deposits into the City of Malden's General Fund of the administrative fee amounts collected by the City as a result of Police Paid Details.
4.      Hiring, discipline and firing of civilian employees of the City of Malden. *(**shared designation**)*

[15] [15] The City designated the Chief on the following topics:

4.      Hiring, discipline and firing of civilian employees of the City of Malden.  *(**shared designation**)*
5.      Collective bargaining negotiations with the Malden Police Patrolmen's Association and the Superior Officers' Union.
6.      The Collective Bargaining Agreement between the City of Malden and the Malden Police Patrolmen's Association.
7.      Orders regarding priority details within the City of Malden Police Department.

**B.    Proposed Evidence to be Submitted by the Plaintiffs**

Below is a list of the exhibits that the Plaintiffs anticipate offering into evidence, except for the purposes of impeachment, and to the extent the Plaintiffs currently have knowledge of the City's witnesses for trial:

1.    December 11, 2007 Letter from Mayor Richard Howard to Malden Police Department Detail Board.

2.    City of Malden Charter with amendments through 2017.

3.    Excerpts from City of Malden Municipal Code regarding Police Details.

4.    Excerpts from City of Malden Municipal Code regarding Treasurer and Controller.

5.    Contract Between the City of Malden and the Malden Police Patrolmen's Association, Inc., dated July 1, 1996 through June 30, 1999.

6.    Notice of Deposition of City of Malden pursuant to Fed. R. Civ. P. 30(b)(6) with schedule and City designations.

7.    Police Manual for the Police Department of the City of Malden

8.    Contract Between the City of Malden and the Malden Police Patrolmen's Association, Inc., dated July 1, 2018 through June 30, 2021.

9.    November 9, 2015 email from Cpt. John Amirault to Chief Kevin Molis re FLSA rate.

10.    September 16, 2019 Letter to City of Malden notifying City of FLSA/ Massachusetts Wage Act Issue.

11.    October 17, 2019 Letter to City of Malden notifying City of FLSA/Massachusetts Wage Act Issue.

12.    November 15, 2019 Letter from Charles Ranaghan to Police Detail Clerk Sullivan directing partial compliance with G.L. c. 44, § 53C.

13.    Collection of patrol officer paystubs reflecting City of Malden funded pay increases from August 28, 2016 to current date.

    13A    Fitzpatrick – October 14, 2016
    13B    Fitzpatrick – October 21, 2016
    13C    Fitzpatrick – January 6, 2017

13D  Fitzpatrick – January 13, 2017
13E  Fitzpatrick – February 16, 2018
13F  Fitzpatrick – February 23, 2018
13G  Headley – July 5, 2019
13H  Headley – July 12, 2019
13I  Owens – July 2, 2020
13J  Owens – July 17, 2020

14.    Jack H. Owens IRS W-2 issued by employer City of Malden

15.    Collection of patrol officer paystubs reflecting City of Malden rate calculation of hourly rate of highest paid patrolman.

15A  Fitzpatrick – September 9, 2016
15B  Fitzpatrick – November 18, 2016
15C  Fitzpatrick – January 13, 2017
15D  Fitzpatrick – June 8, 2018
15E  Headley – August 16, 2019
15F  Owens – July 31, 2020

16.    Exemplar of paystubs reflecting overtime paid at less than FLSA required rates.

16A  Amirault – September 23, 2016
16B  Amirault – October 21, 2016
16C  Amirault – April 21, 2017
16D  Amirault – May 5, 2017
16E  Amirault – August 25, 2017
16F  Amirault – March 9, 2018
16G  Amirault – August 2, 2019
16H  Amirault – August 9, 2019
16I  Amirault – May 29, 2020
16J  Amirault – February 26, 2021

17.    Malden Police Department Time Cards – all employees

17A  2016
17B  2017-1
17C  2017-2
17D  2018-1
17E  2018-2
17F  2019-1
17G  2019-2
17H  2020-1
17I  2020-2
17J  2021

18.    FY2017 to FY2021 Revenue Report of City of Malden reporting Detail Administrative Fees Collected In Operative Timeframe – $2,024,034.39.

19.    Detail Hours Records 2016 – August 28, 2016 to end of year.

20.    Detail Hours Records 2017

21.    Detail Hours Records 2018

22.    Detail Hours Records 2019

23.    Detail Hours Records 2020

24.    Detail Hours Records 2021

25.    End of Year Paystubs for all Plaintiffs ***separately marked by name and year.

26.    Malden Police Department Detail Rules and Procedures (Updated Feb. 2016)

27.    Memorandum of Agreement by and between the MassCOP Local 479 and the Cityof Malden, dated March 2, 2021.


                              Respectfully submitted,
                              PLAINTIFFS,
                              JACK OWENS, JEFFREY DREES,
                              KATELYN MURPHY, PATRICK
                              MANOLIAN, SCOTT MANN, and SEAN
                              HUSSEY, on behalf of themselves and all
                              other similarly situated,
                              By Their Attorney,


                              /s/ Joseph A. Padolsky
                              Joseph A. Padolsky (BBO# 679725)
                              Louison, Costello, Condon & Pfaff, LLP
                              101 Summer Street, 4th Floor
                              Boston, MA 02110
                              (617) 439-0305
                              (617) 439-0325 (facsimile)
                              jpadolsky@lccplaw.com

Dated: May 3, 2021

## <u>CERTIFICATE OF SERVICE</u>

  I certify that on this day I caused a true copy of the above document to be served upon the attorney of record for all parties via CM/ECF

<table>
<tr>
<td>
Barry J. Miller (BBO # 661596)<br>
bmiller@seyfarth.com<br>
Alison Silveira (BBO # 666814)<br>
asilveira@seyfarth.com<br>
Timothy Buckley (BBO # 691200)<br>
tbuckley@seyfarth.com<br>
Seyfarth Shaw LLP<br>
Seaport East<br>
Two Seaport Lane, Suite 300<br>
Boston, MA 02210-2028
</td>
<td>
John J. Clifford<br>
john@cliffordkennylaw.com<br>
David K. Kouroyen<br>
david@cliffordkennylaw.com<br>
Clifford & Kenny, LLP<br>
31 Schoosett Street, Suite 405<br>
Pembroke, MA 02359
</td>
</tr>
</table>

*/s/ Joseph A. Padolsky*
Joseph A. Padolsky

Date: <u>May 3, 2021</u>