## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

JACK OWENS, JEFFREY DREES,
KATELYN MURPHY, PATRICK
MANOLIAN, SCOTT MANN, and SEAN
HUSSEY, on behalf of themselves and all
others similarly situated,

               Plaintiff,

    v.

CITY OF MALDEN,

               Defendant.

Civil Action No. 1:19-cv-11835-WGY

## DEFENDANT'S MOTION FOR JUDGMENT ON PARTIAL FINDINGS

Defendant the City of Malden (the "City") hereby moves, pursuant to Fed. R. Civ. P. 52(c) for entry of judgment in its favor on partial findings. Plaintiffs' Massachusetts Wage Act ("Wage Act") claim (Count II) fails for several reasons. Most critically, while Plaintiffs' fundamental contention in this case is that they have been underpaid as a result of a deficient calculation of their detail rate of pay, the evidence conclusively establishes that they have in fact been <u>overpaid</u> as a result of an inflated calculation of the detail rate implemented by a Detail Board comprised of the same officers who now bring this litigation to challenge the rate they set. The collective bargaining agreement between the City and its Patrol Officers is the sole source of Plaintiffs' entitlements in conjunction with their employment, and an unambiguous provision of that agreement recites the agreed-upon method for calculating the rate of pay for details. That rate consists of two elements: (1) the maximum patrolman's base pay, and (2) a "night differential" (also referred to as a "shift differential") wage augment of 6%. Plaintiffs' contention that this provision of the CBA is properly read to include not only the night differential wage augment, but also a host of other wage augments that officers may receive in conjunction with their employment, cannot be reconciled

with the plain language of the agreement.  The express inclusion of the night differential wage augment in the formula for detail compensation necessarily excludes, as a matter of basic principles of contract interpretation, the other wage augments that Plaintiffs contend to be properly included in the detail rate.  The evidence presented at trial thus far therefore conclusively demonstrates that the rate of pay that officers received for working details was higher than prescribed by the governing contract, and Plaintiffs' Wage Act claim fails.

Plaintiffs' theory that application of a 10% administrative fee to the detail rate improperly reduced their compensation cannot salvage their Wage Act claims.  There is no dispute that Plaintiffs are paid exactly the same rate for working so-called "City Details," *i.e.*, details billed directly to a City Department, that they receive for working "Private Details," *i.e.*, details billed to third party vendors and subject to the administrative fee.  The unequivocal evidence thus shows that the City's administrative fee, when charged to vendors, is *in addition to* the rate paid to officers.  Plaintiffs' contention that the detail rate they have been paid is the rate charged to vendors, less 10%, is demonstrably incorrect.

Plaintiffs' Fair Labor Standards Act ("FLSA") overtime claim (Count I) is premised on the contention that Plaintiffs' rate of pay for working City Details is insufficient to satisfy their overtime entitlements in workweeks in which they work more than 40 hours.  Plaintiffs typically work less than 40 hours per week in their regularly scheduled shifts, and no Named Plaintiff has shown a single incident of having worked a City Detail in a workweek in which he or she also worked more than 40 hours during the statute of limitations period.  Having failed to identify even one workweek in which even one Plaintiff worked more than 40 hours during the relevant period, Plaintiffs failed to establish a violation of the FLSA's overtime requirements.

Plaintiffs further seek to extend the statute of limitations on their FLSA claim from two years to three, pursuant to 29 U.S.C. § 255, arguing that the City's alleged violation of the FLSA was "willful." Plaintiffs bear the burden of demonstrating willfulness, which under the FLSA requires a showing that the City knew or showed reckless disregard as to whether its conduct was prohibited by the statute. Further, Plaintiffs must show that the City's willful violation occurred during the third year prior to assertion of their claims (i.e., the period that would be rendered timely by a willful violation) in order to carry their burden. Plaintiffs have no prospect of making the required showing of willfulness. The evidence they have elicited on this point relates exclusively to (1) the City's knowledge of operative issues in this case beginning just days before Plaintiffs filed this litigation, when Plaintiffs brought these issues to the City's attention for the very first time; and (2) a separate litigation against the City that involved the timing of payments due under state law for details worked, but which had nothing whatsoever to do with the applicable rate of pay. Neither of these points even begin to show that the City acted with knowledge that it had underpaid officers for working overtime or showed reckless disregard on the subject. Each Plaintiff's FLSA claim is thus limited to two years prior to such Plaintiff joining this litigation.

Plaintiffs have been heard fully, as Rule 52(c) requires. However, they have failed to meet their evidentiary burdens. For any of the above reasons, established during Plaintiffs' case-in-chief, the Court should enter judgment in favor of the City and against Plaintiffs on all counts.

## FACTS ESTABLISHED DURING PLAINTIFFS' CASE-IN-CHIEF

### A.     Plaintiffs Are Paid More for Working Details than the CBA Prescribes

As patrol (*i.e.*, non-superior) officers, Plaintiffs are members of the Malden Police Patrolmen's Association (the "Patrol Union"), which is the exclusive bargaining agent for patrol officers employed by the City. The Patrol Union negotiated and entered into a CBA with the City

that governs the terms and conditions of employment for all of the City's patrol officers.  The CBA sets the compensation rates for various types of work that patrol officers perform, including contractual overtime, court time, and paid details.  *See* Trial Exhibit 3, 1997 CBA, Art. 13, § 1 (court time), Art. 16, § 3 (contractual overtime), Art. 23, § 3 (details); Trial Exhibit 5, 2019 CBA, Art. 14, § 1 and Art. 16, § 3 (court time),  Art. 16, § 4 (contractual overtime), Art. 23, § 3 (details).

The CBA sets the rate for all paid details as follows: "one and one half times **the maximum patrolman's rate of pay including night differential.**"  *See* 2019 CBA, Art. 23, § 3 (emphasis added).  The evidence established that no party ever proposed any changes to the provisions of Article 23 of the CBA pertaining to the detail rate, which has remained unchanged for decades. *See* 1997 CBA, Art. 23, § 3.  The evidence also established that no party contends that any document, other than the CBA, has any impact on the proper rate for paid details (with the exception of the Superior Officer's Memorandum of Agreement, which pertains only to details worked by Superior Officers after April 2021).  The CBA prescribes a detail rate comprised of just two elements: (1) maximum patrolman's rate of pay, and (2) the night differential wage augment.

In addition to the detail rate, the CBA provides various formulas for the calculation of other premium rates paid to officers for tasks other than working details.  Those alternative calculations demonstrate that the parties' agreement to limit the detail rate to include only base pay and one wage augment – night differential – was knowing and intentional.  Where the parties wanted to include other augments, like Quinn Bill pay, hazardous duty pay, or longevity pay in the calculation of a particular rate of pay, they did so explicitly.  For example, the CBA contemplates an hourly rate for Court Time that is identical to the contractually prescribed detail rate.  *Compare* Art. 14, § 1 *with* Art. 23, § 3.  When the parties sought to incorporate Quinn Bill pay into the Court Time rate, they did so explicitly, specifying that Quinn Bill pay "shall [be] included and calculated

for court time as well as the one and one half (1 ½) overtime rate" so long as the officer meets certain attendance criteria. *See* Art. 16, § 3. There is no provision of the CBA that similarly incorporates wage augments other than the night differential into the detail rate.

Details take two forms: (1) details on behalf of City departments ("City Details"), and (2) details on behalf of third-parties ("Private Details"). City Details are requests by a City department for an officer to provide safety or traffic-management services in conjunction with an event or function of the City, such as providing security for events at City schools or traffic management for a Department of Public Works crew repairing a road or other infrastructure, and where the City or a City department is invoiced for the work. Private Details involve security or traffic-control services requested by a third party, such as directing traffic and providing security around a third-party construction project (*i.e.*, repairs to telephone lines owned by Verizon, or gas lines owned by National Grid, or private building or landscape construction), or providing security services at private events (*i.e.*, bars and restaurants), and are billed directly to the third party. The evidence revealed that the vast majority of details that Plaintiffs work are Private Details.

The CBA establishes a "Detail Board," consisting of seven union police officers, who are granted the sole authority to "establish rules and procedures pertaining to details." *See* 1997 CBA, Art. 23, § 5; 2019 CBA, Art. 23, § 5. The Detail Board, with the assistance of the Detail Clerk (Mardie Sullivan), is charged with "control over all matters having to do with details." *Id*., Art. 23, § 8. The record evidence is that the City has, at all relevant times, interpreted this provision to vest with the Detail Board the responsibility to actually do the math and calculate the detail rate in the manner required by Article 23, § 3. Prior to this litigation, the City had no notice of the specific arithmetic that the Detail Board used to calculate the detail rate. No officer or union representative

(or anyone else) had ever suggested any potential issue with the detail rate, and the City had no reason to suspect that the detail rate had been miscalculated in any way

The evidence showed that the City has handled funds received for Private Details as subject to the Commonwealth's Municipal Finance Law, G.L. c. 44, § 53C, which provides that municipalities may charge a fee to third parties for Private Details.  *Id*.  Given this statutory authorization, the City requires that third parties requesting Private Details pay a 10% fee, over and above the amount paid to the officer(s) working such details, to defray the City's costs of administering the entire detail program.  That fee is a charge that the City imposes on third party vendors, which has no impact whatsoever on the rate paid to officers working such details.  The undisputed evidence shows, for example, that Plaintiffs were paid $59.92 per hour for details worked in 2020, irrespective of whether they were City Details or Privates. That Plaintiffs receive the same rate of pay for working Private Details, to which the administrative fee is applied, and City Details, to which no administrative fee is applied, ends the inquiry as to Plaintiffs' contention that this fee is somehow deducted from the sums paid to officers for working details.  Officers receive the same rate for working details, irrespective of application of the administrative fee, and there can be no serious argument that this fee is deducted from officers' earnings.

A simple math problem confirms the same conclusion.  As demonstrated during the City's cross examination of Mr. Ranaghan, the hourly rate charged to private vendors in 2020 was $65.91. Conversely, the hourly rate charged to City departments (the Malden Public Schools, in the example shown at Exhibit 38) was $59.92 per hour.  The $5.99 per hour delta between the rates charged for Private versus City Details is the 10% administrative fee.  Plaintiffs' theory that the administrative fee is deducted from officers' earnings cannot be reconciled with these figures.  If the fee were deducted from the rate charged to vendors, as Plaintiffs contend, the rate paid to

officers for a detail invoiced to vendors at $65.91 would be $59.32 (90% x $65.91), sixty cents per hour less than officers were, in fact, paid. Plaintiffs' theory that the 10% administrative fee is deducted from officers' pay is mathematically unsound.

The CBA does not authorize the Detail Board, or anyone else, to change the contractually agreed upon manner of calculating the hourly rate for details. Rather, the CBA is clear that "No . . . variation of the terms or provisions of this Agreement shall bind the parties hereto unless made and executed **in writing by both parties**," and further requires that any such writing be "**signed by the authorized representatives of both the Association and the City**." CBA, Art. 4, § 2 (emphasis added) No such writing exists, and thus the detail rate remains as defined in the CBA.

Notwithstanding the clear and binding nature of the CBA's provision for the detail rate, as a matter of empirical fact, the detail rate paid to officers was calculated based on an inflated calculation that included wage enhancements not contemplated by Article 23 of the CBA into the detail rate, including Quinn Bill pay, longevity pay, and hazardous duty pay. This error resulted in each Plaintiff receiving an hourly rate for all details that substantially exceeded the rate negotiated and agreed to by the parties.

### B. Plaintiffs Have Failed to Identify Any Underpayment of FLSA Overtime

Despite extensive efforts, Plaintiffs have been unable to establish a single instance of an officer working more than 40 hours in the same workweek that the officer worked a City Detail. During Trial Day 2, Plaintiffs' counsel proffered two potential instances of an officer working more than 40 hours in a week in which he also worked a City Detail, but both were outside the applicable statute of limitations period and properly excluded from evidence.[1] During Trial Day

---

[1] Plaintiffs first undertook to show an instance of overtime worked in the same week as a City Detail with respect to a detail worked by Michael Powell on April 24, 2017. Officer Powell joined this litigation on August 21, 2020. *See* Docket No. 123. The standard and presumptive statute of limitations for FLSA violations is two years from the date on which a plaintiff initiates or joins litigation. 29 U.S.C. § 255; *McLaughlin v. Richard Show Co.*, 486 U.S. 128, 133

3, Plaintiffs again undertook to establish two instances of an officer working more than 40 hours in the same week as a City Detail, but cross-examination revealed that neither of Plaintiffs' proffers involved a workweek of more than 40 hours.[2]

### C.  There Is No Evidence of any Willful Violation of the FLSA

In an effort to prove that the City willfully violated the FLSA, Plaintiffs have focused their efforts on the fact that their counsel sent two cease and desist letters to the City's counsel *after* Plaintiffs filed this lawsuit.  Plaintiffs have also made much of the fact that the City was subject to a prior lawsuit under the Wage Act, *Malden Police Officers Ass'n v. City of Malden*, filed in 2015. The wage-related issue in that case, however, had nothing to do with the rate officers received for City Details or overtime.  The issues in that lawsuit pertained exclusively to the alleged late payment of wages.  There is no evidence that Plaintiffs, the Patrol Union, or their attorneys ever raised any complaint or issue regarding Plaintiffs' overtime compensation or rate of pay for details at any time during that prior lawsuit.

More generally, there is no evidence of any complaints, reports, or even inquiries to the City about the alleged failure to pay proper overtime wages prior to this lawsuit.  Former Mayor Howard, Mayor Christenson, and Mr. Ranaghan each testified that no one raised any concerns

---

(1988).  Any claim based on this detail would be time-barred by approximately sixteen months.  Plaintiffs then put on evidence of a City Detail worked by Captain John Amirault on March 9, 2018.  Captain Amirault also joined this litigation on August 21, 2020 (Docket No. 34), and the detail at issue is thus time-barred by approximately five months.

[2] Plaintiffs undertook to show that Officer Patrick Manolian worked more than 40 hours during the workweek in which he worked a City Detail for the Department of Public Works on October 31, 2020.  Cross-examination revealed that this presentation was based on an errant construction of the applicable workweek, and that Officer Manolian in fact worked a total of approximately 28 hours during the week at issue.  Plaintiffs then referenced a detail worked by Officer Richard Barthelmes on March 14, 2020 at the request of the Mayor's Office.  Upon cross-examination, it was demonstrated that this presentation was also based on an errant construction of the applicable workweek, and Officer Barthelmes worked approximately 36 total hours during the week in question.

about officers' overtime pay until days before Plaintiffs filed this lawsuit.  This testimony stands

unrebutted.

## STANDARD

A motion under Rule 52(c) during a bench trial is the counterpart of a Rule 50(a) motion

for judgment as a matter of law during a jury trial.  *See Fed. Ins. Co. v. HPSC, Inc*., 480 F.3d 26,

32 (1st Cir. 2007) ("we treat motions for judgment as a matter of law made during bench trials as

motions for judgment on partial findings under Rule 52(c)").  Rule 52(c) states:

> "If a party has been fully heard on an issue during a non-jury trial and the court
> finds against the party on that issue, the court may enter judgment against the party
> on a claim or defense that, under controlling law, can be maintained or defeated
> only with a favorable finding on that issue."

Fed. R. Civ. P. 52(c).  "In resolving a Rule 52(c) motion, 'the court's task is to weigh the evidence,

resolve any conflicts in it, and decide for itself in which party's favor the preponderance of the

evidence lies.'"  *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 30 (1st Cir. 2018) (quoting 9C

Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2573.1 (3d ed.)); *see also*

*Feliciano v. Rullan*, 378 F.3d 42, 59 (1st Cir. 2004) ("When a party has finished presenting

evidence and that evidence is deemed by the trier insufficient to sustain the party's position, the

court need not waste time, but, rather, may call a halt to the proceedings and enter judgment

accordingly.").  Under the Rule 52(c) standard, the Court should enter a judgment in favor of the

City on Plaintiffs' Wage Act and FLSA claims.

## ARGUMENT

I.   **Plaintiffs' Wage Act Claim Fails**

A.   **The Evidence Established that the Rate of Pay that Plaintiffs Received for
     Working Details Exceeded the Rate Prescribed by the Governing CBA**

"The purpose of the Wage Act is to prevent the unreasonable detention of wages." *DeSaint*

*v. Delta Air Lines, Inc*., 2015 U.S. Dist. LEXIS 49706, *24 (D. Mass. Mar. 15, 2015) (internal

citations and quotations omitted) *adopted by* 2015 U.S. Dist. LEXIS 49698 (D. Mass. Apr. 15, 2015).  Consistent with that purpose, to establish a Wage Act violation, an employee must prove that his employer failed to pay him earned wages.  *Id*.  However, "not all forms of employer-provided compensation and benefits constitute 'wages' under Chapter 149."  *Mui v. Mass. Port Auth.*, 2015 WL 1842635, at *3 (Mass. Super. Apr. 1, 2015).  The Wage Act requires only that employers pay their employees what the employers have obligated themselves to pay.  *Mui*, 2015 WL 1842635 at *8 ("the essential promise of the Wage Act is that an employer will pay an employee what it has promised to pay"); *Salerno v. Baystate Ford*, 2016 WL 513747, at *2 (Mass. Super. Feb. 5, 2016) ("the Wage Act requires no more than that employees be paid on a timely basis and in accordance with the terms of their agreement with their employers."); *DeSaint*, 2015 U.S. Dist. LEXIS at *29 ("as long as the employer pays each of its employees all 'wages earned' in a timely manner . . . , parties to an employment relationship are free to use whatever compensation structure they see fit.").  Thus, when evaluating Wage Act claims, "courts have looked to whether or not an employer has contractually bound itself to provide a certain benefit before such benefit will be considered a compensable wage".  *Mui*, 2015 WL 1842635 at *8.  Here, Plaintiffs' Wage Act claim fails because they received pay for all details exceeding their contractual entitlement.

### 1.     The CBA Is Unambiguous

The parties' CBA prescribes the rate Plaintiffs are due for working details: "one and one half times the maximum patrolman's rate of pay including night differential."  CBA, Art. 23, § 3.  The CBA does not state or imply that the City must pay anything more than the hourly rate generated by this calculation.

The detail rate prescribed by the CBA is plain and unambiguous.  No testimonial opinion evidence or documentary evidence can change that.  The absence or existence of ambiguity in a

contract is a question of law for the Court to decide, based only on the language of the contract. *Alison H. v. Byard*, 163 F.3d 2, 6 (1st Cir. 1998) ("The question of whether a contract term is ambiguous is one of law for the judge."); *Castricone v. Mical*, 74 Mass. App. Ct. 591, 599 (2009) ("A judge determines the existence of an ambiguity from an inspection of the text of the entire contract."); *Zubick v. Zubick*, 829 N.E. 2d 1186 (Mass. App. Ct. 2005); *Farmer Ins. Exch. v. RNK Inc.*, 632 F.3d 777, 783 (1st Cir. 2011) ("To answer the ambiguity question, the court must first examine the **language of the contract by itself**, independent of extrinsic evidence concerning the drafting history or the intention of the parties. Ambiguity is not created merely because the litigants disagree about the meaning of a contract.") (emphasis added); *Nicolaci v. Anapol, Inc.*, 387 F.3d 21, 26 (1st Cir. 2004) ("Ambiguity is not created merely because the litigants disagree about the meaning of a contract.").

As the Court, Plaintiffs' counsel, and Defendant's counsel all noted during trial, the detail rate established by the CBA is unambiguous.  In light of the CBA's clarity, parol evidence as to the meaning of Article 23, § 3 is inadmissible.  *West v. Donvan*, 2007 WL 738909 (Mass. Super. Feb. 21, 2007) (citing *A.B.C. Auto Parts, Inc. v. Moran*, 359 Mass. 327, 330 (1971)); *Local 1547, Intern. Ass'n of Machinists and Aerospace Workers v. Gulf & Western Mfg. Co.*, 417 F. Supp. 191, 198-99 (D. Me. 1976) ("This policy[, the rule against parol evidence,] takes on added strength where the material provisions of the collective bargaining agreement are clear and unambiguous"). Thus, any testimony from any witness suggesting ambiguity in the CBA's formula for calculating the detail rate must be disregarded.

The unambiguous nature of the CBA provision prescribing the detail rate is confirmed by a review of other premium rates of pay prescribed in the agreement.  For instance, the CBA specifies that another premium rate, Court Time, also be paid at the rate of "one and one-half times

the maximum patrol officer's rate of pay including night differential . . . ." *Id*. Art. 14, § 1.   A parallel provision specifies that officers earning Quinn Bill Benefits "shall have such benefit included and calculated for court time as well as the one and one half (1½) overtime rate."  CBA, Art. 16, § 4.  There is no similar provision for the inclusion of Quinn Bill pay (or any augment other than night differential) in the detail rate to be found anywhere in the CBA.  The CBA also specifies that another premium rate of pay, Contractual Overtime, be paid at the rate of "1/40th of the officer's weekly pay to include base pay, hazardous duty pay, night differential, longevity, and educational incentive monies to which the officer is entitled, multiplied by one and one-half for the number of hours worked."  *See* Exhibit 5, Art. 16, § 4.  The parties were thus plainly aware of various wage augments they could have included in the formula for calculating various forms of pay under the CBA and knew how to incorporate those augments expressly where so intended, including the likes of Quinn Bill Benefits, hazardous duty pay, and longevity incentives.  In fact, when they wanted to include Quinn Bill Benefits, along with the maximum patrol officer's rate of pay including night differential, in the rate for Court Time, they did so explicitly.  The parties included none of these elements of pay in the CBA's express rate for detail pay; instead the specified only base pay and one wage augment – the night differential.

By specifically including one wage augment, the night differential, in the rate for paid details, the maxims of contract interpretation dictate that other wage augments not specifically included, such as the Quinn Bill Benefits and Senior Longevity benefit, are excluded pursuant to the doctrine of *expressio unius est exclusio alterius*.  *Laurin v. Providence Hosp.*, 150 F.3d 52, 60 (1st Cir. 1998) (applying *expressio unius* to conclude that "[b]y specifying but one criterion which excuses day nurses from shift rotation—namely, the prescribed levels of seniority—the CBA plainly implied that other criteria did not warrant waivers of the shift-rotation requirement.");

*Smart v. Gillette Co. Long Term Disability Plan*, 70 F.3d 173, 178-79 (1st Cir. 1995) (applying *expressio unius* maxim to contracts).

The evidence established that the compensation Plaintiffs received for working details was higher than the CBA prescribed.  Irrespective of how or by whom the detail rate was calculated, this ends the inquiry.  The application of the administrative fee has no impact on this analysis.  The rate paid to Plaintiffs, *after that fee was accounted for and paid to the City*, always exceeded the rate prescribed by the CBA, by a margin of $4/hour to nearly $12/hour throughout the period implicated by this litigation.  *See* Exhibit AO.

### 2.    Past Practice Cannot Salvage Plaintiffs' Wage Act Claim

Plaintiffs undertake to salvage their Wage Act claim by pointing to the consistent practice, unbeknownst to the City until the filing of this litigation, of including all available wage augments in the calculation of the detail rate for at least the entire relevant period.  This argument fails, as a legal matter, because past practice **does not alter** the parties' obligations under a clear and integrated contract.  *Linton v. New York Life Ins. And Annuity Corp.*, 2006 WL 3043224, at *1 (D. Mass. 2006) ("Plaintiff's first argument [(i.e. that 'the record demonstrates that the parties themselves interpreted the language differently',] turns basic contract law on its head. Recourse to performance and usage of trade to interpret contract terms are necessary only when the contract terms are ambiguous. To accept plaintiff's theory—that a course of performance in conflict with the contract  terms itself demonstrates ambiguity—would nullify the rule."); *Bricklayers and Allied Craftworkers Local 5 of New Jersey Pension & Annuity Funds v. Chanree Const. Co., Inc.*, 2013 WL 6528776, at *2–3 (D.N.J. Dec. 12, 2013), *on reconsideration from* 2012 WL 5989451 (D.N.J. Nov. 29, 2012) (past practice could not alter requirements of an unambiguous CBA).

Plaintiffs' invocation of past practice is also a self-defeating argument for liability.  As a logical matter, if past practice could have modified the parties' rights and obligations under the

CBA, the result would be to amend the agreement to incorporate that past practice in displacement of the plain contractual language.  In that event, the detail rate would come to be appropriately calculated in accordance with the apparently longstanding and unchanged practice that Plaintiffs invoke, and Plaintiffs would be entitled to exactly what they received: the detail rate as calculated to include both the addition of extraneous wage augments and the application of the 10% administrative fee.  Put differently, past practice cuts both ways, and if Plaintiffs are able to avail themselves of an inflated rate of pay for details, they are also bound by any reduction in that amount effected by application of the administrative fee.  *Buffalo Tungsten Inc. v. CMW Intern., Inc.,* No. 11–CV–00875(M), 2013 WL 5472665, at *2–3 (W.D.N.Y. Sept. 30, 2013) (where the parties' course of dealing is relevant, evidence of the "'course of dealing' cuts both ways" and plaintiff's selective reliance upon only certain evidence of the parties' course of dealings is improper); *Central States, Southeast and Southwest Areas Pension Fund v. Kroger Co*., No. 93 C 3669, 1998 WL 128715, at *6 (N.D. Ill. March 17, 1998) (plaintiffs could not selectively rely upon certain unwritten past practices while claiming other, unwritten past practices should not be considered and finding because "Plaintiffs cannot have it both ways; they cannot insist that a writing is necessary as to one practice but not the other.").  If past practice could alter the parties' rights and obligations under the CBA, Plaintiffs would be subject both to the aspects of that past practice that worked in their favor (the inflated rate calculation) and those that did not (application of the administrative fee), and they would be entitled to nothing more.  Plaintiffs' Wage Act claim would thus still fail entirely, even if past practice were germane to the inquiry.

### 3.   The Administrative Fee Charged to Private Vendors Has Nothing to Do with Plaintiffs

Plaintiffs have constructed their theory of liability under the Wage Act around the 10% administrative fee applied to Private Details.  That sum is not a wage and has nothing to do with

Plaintiffs' legal entitlements.  The administrative fee is authorized by statute and charged to third parties procuring details; it has no effect on officers' pay or entitlements, whether the administrative fee is calculated correctly or incorrectly.

More to the point, the administrative fee has no impact on the detail rate to which officers are entitled because the detail rate is solely a creature of the parties' CBA, which makes no mention of the administrative fee or any sum charged to vendors in conjunction with Private Details.  Put differently, so long as Plaintiffs were paid at least the amount prescribed by their contract – and here, they were paid materially more – there is no violation of the Wage Act, irrespective of anything having to do with the administrative fee.  *See Mui*, 2015 WL 1842635 at *8; *Salerno*, 2016 WL 513747 at *2; *DeSaint*, 2015 U.S. Dist. LEXIS at *29.

If the 10% administrative fee charged to third party vendors was higher than it should have been because the detail rate equation added elements not contemplated by the CBA, that does not turn the administrative fee into a wage owed to Plaintiffs.  The administrative fee is a statutorily authorized transaction between the City and third party vendors.  It need not be a subject of bargaining or referenced in the CBA.  *West Bridgewater Police Ass'n v. Labor Relations Com'n*, 18 Mass. App. Ct. 550, 554 (1984) ("the [Labor Relations] commission has taken the position that 'management decisions which do not have direct impact on terms and conditions of employment' are not mandatory subjects of bargaining. The courts are in accord."); *Sec. of Admin & Finance v. Com. Employment Relations Bd.*, 74 Mass. App. Ct. 91, 97 (2009) (no obligation to bargain over "peripheral matter not impinging directly on wages and not a condition of employment"); *see also School Committee of Newton v. Labor Relations Com'n*, 388 Mass. 557, 563–64 (1983).  And correct or incorrect, the administrative fee causes no harm to – and has no impact on – any Plaintiff.

Further, the Municipal Finance Law regulates the City's own finances; it does not confer on Plaintiffs a private right of action.  In the absence of any cognizable harm and a right of action, Plaintiffs lack standing to assert a claim under the Municipal Finance Law.  *Loffredo v. Ctr. Addictive Behaviors*, 426 Mass. 541, 544 (1998) ("we have generally been reluctant to infer a private cause of action from a statute in the absence of some indication from the Legislature supporting such an inference."); *Hernandez v. Securus Techs., Inc.*, 2017 U.S. Dist. LEXIS 29618, *3-4 (D. Mass. Mar. 2, 2017) ("Standing requires three elements: injury, causation, and redressability.") (internal citations omitted).

At bottom, to establish a Wage Act violation, Plaintiffs had to prove that the City paid them less than the City agreed to pay them for such work.  The parties' CBA reflects clearly what the City agreed to pay Plaintiffs for detail work— one and one half times the maximum patrolman's rate of pay including night differential.  Yet Plaintiffs received pay rates for details that were higher than the City agreed to pay.  Given these facts, Plaintiffs have failed to prove that the City failed to pay them earned wages, and their Wage Act claim fails.

## II.    Plaintiffs' FLSA Claim Fails

### A.  Plaintiffs Have Failed to Show that They Worked Overtime

Under the FLSA, non-exempt employees are entitled to overtime compensation at 1.5 times their regular rate of pay for all hours of work in excess of 40 hours per workweek.  29 U.S.C. § 207(a)(1).  An employee who asserts an overtime claim under the FLSA "has the burden of proving that he performed work for which he was not properly compensated."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946); *Urbani v. Wellesley Coll.*, 2016 WL 6571247 at *12 (D. Mass. Jan. 12, 2016) (same); *Porcal v. Ciuffo*, 2013 WL 3989668 at *3 (D. Mass. Aug. 1, 2013) ("Aggrieved employees suing for unpaid wages carry the initial burden of demonstrating that they actually performed the work for which they allege.").  Because Plaintiffs' FLSA overtime

claim is premised on the rate of pay they received for working City Details (*see* Am. Compl., Docket No. 8, ¶ 46), they must more specifically show that they worked more than 40 hours in workweeks in which they also worked a City Detail.

Even if some Plaintiffs could show that they worked more than 40 hours in a workweek that included a City Detail, the vast majority of them have not even attempted to do so. In a case that proceeds in a representative capacity under the FLSA, no plaintiff is relieved of this fundamental burden. *Dyse v. HealthAll Consulting*, 433 F. Supp. 3d 35 (D. Mass. 2020) (requiring proof that "plaintiffs were employed 'for a workweek longer than forty hours' and that any hours worked in excess of forty per week were not compensated 'at a rate not less than one and one-half times the regular rate.'"); *Banks v. Birmingham Board of Educ.*, 2017 WL 3218046 (N.D. Ala. July 28, 2017) ("[A]s a threshold matter, to recover FLSA overtime wages, each opt-in plaintiff must be able to prove that he or she worked more than 40 hours in one or more workweeks"). Thus, each Plaintiff must establish that he or she worked more than 40 hours during a workweek.

Here, no Plaintiff has met this burden. No Plaintiff has identified any workweek in which he or she even arguably worked over 40 hours and worked a City Detail. Despite their extensive and determined efforts, the only evidence Plaintiffs offered on this point during the statute of limitations period pertained to two examples involving Patrick Manolian and Richard Barthelemes, as described above. Upon a proper calibration of the workweek—established by the CBA that Plaintiffs' counsel negotiated—it became clear that each such Plaintiff worked less than 40 hours during the weeks in question. Thus, in a case involving more than 100 Plaintiffs and thousands of individual workweeks, Plaintiffs have failed to identify even one that involved a potential violation of the FLSA.

Even if Plaintiffs had proven that some subset of them worked over 40 hours during certain workweeks, there would be no basis to find liability across all Plaintiffs.  In an overtime case, the fundamental liability question boils down to the number of hours worked, which vary substantially from Plaintiff-to-Plaintiff and from week-to-week.  As such, any conclusion about Plaintiffs as to whom no evidence of a violation was presented would either be unsupported by evidence, or if based on the abstract declarations that Plaintiffs have sought regarding liability, an impermissible advisory opinion.  *See, e.g.*, *Whittington v. Taco Bell of Am., Inc.*, 2011 WL 1772401, *5–6 (D. Colo. 2011) (declaratory judgment on enforceability of an arbitration agreement as to plaintiffs in an FLSA action would be an impermissible advisory opinion when no evidence existed of agreements executed by plaintiffs); *Alley v. United States Dep't of Health and Human Servs.*, 2010 WL 15561222, at *5 (N.D. Ala. Sept. 30, 2010) ("The role of this court is to adjudicate cases in controversy, not to issue advisory opinions about whether policies violate FOIA where no evidence exists that the policies impacted the particular [p]laintiffs at bar.").  Plaintiffs have provided no basis for a finding of liability as to the majority of the individuals participating in this matter, and as to those individuals, Plaintiffs have failed to carry their burden of proof on their FLSA claim.

### B.  Plaintiffs' Claims Are Limited to a Two-Year Recovery Period Because They Have Failed to Establish a Willful Violation

The standard statute of limitations for FLSA claims is two years from the date that a given Plaintiff asserts a claim by initiating or joining an action in Court.  29 U.S.C. § 255.  To invoke an extended, three-year limitations period for "willful" violations, a plaintiff must show that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988).  Plaintiffs bear the burden in establishing a willful violation.  *Cruz v. Boston Litig. Sol*., 2016 U.S. Dist. LEXIS 187470, *24 (D. Mass. May 24, 2016).  This requires a showing that exceeds simple

negligence and at least borders on intentionally wrongful conduct. *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 681 (1st Cir. 1998) (noting the Supreme Court's rejection of negligence standard and holding "that an employer does not act willfully even if it acts unreasonably in determining whether it is in compliance with the FLSA.") (citations omitted). Further, Plaintiffs must show that the willful conduct occurred **during the third year before they asserted their claims** (*i.e*., the period that would be rendered timely by a showing of willfulness). *See Solis v. La Familia Corp.*, 2013 U.S. Dist. LEXIS 19899, *23 (D. Kan. Feb. 14, 2013) ("the willful violation that gives rise to the cause of action must occur during the third year preceding the date the complaint is filed."); *Terry v. City of Ola*, 2013 U.S. Dist. LEXIS 203234, *50 (E.D. Ark. March 8, 2013) (holding plaintiffs "have not met their burden of showing that [defendant's] actions were willful at any point outside of the FLSA's two-year limitations period."). Here, there is no evidence if willful, intentional, or reckless conduct.

Plaintiffs have focused their presentation of evidence on a claim that the City failed sufficiently to investigate the rate that officers were paid for details and verify that it was properly calculated, essentially arguing that the City's conduct was negligent. Even if credited, this evidence is woefully insufficient to establish a willful violation. The First Circuit has rejected the notion that a failure to investigate compliance with the FLSA can, without more, demonstrate willfulness. *See Herman*, 163 F.3d at 681.

The City had no reason to suspect that there was any issue with the detail rate. None of the Plaintiffs, neither of their unions, nor their legal counsel did anything to raise an issue with the detail rate until Attorney Padolsky requested a meeting on this subject days before filing this suit, and there is no suggestion that any representative of the City had any reason to suspect any issue with the detail rate during the third year prior to the initiation of this suit.

Plaintiffs have attempted to substantiate their assertions of willfulness with repeated references to another litigation, which culminated in the ruling from the Massachusetts Appeals Court in *Malden Police Patrolman's Ass'n v. City of Malden*, 92 Mass. App. Ct. 53 (2017), but the pendency of this litigation does nothing to advance their efforts to show a willful violation. The parties mutually acknowledge that the prior litigation related exclusively to the timing of payments to officers for working details; the rate of pay for details was not at issue in the litigation in any way.  Far from creating a mandate to investigate the specifics of how the detail rate had been calculated, the years-long prosecution of the prior action, with no mention of the applicable rate of pay for details by either party, suggests that no party was aware of any problem with the rate during those proceedings.  Presumably, even Plaintiffs were unaware of any issue with the rate at the time of the prior litigation, or they would have included claims on that subject in their prior complaint.  Neither the City, nor apparently Plaintiffs, had any reason to dissect the rate of pay for details as a result of the prior proceedings, and that case does nothing to assist Plaintiffs in proving a willful violation.

To the extent Plaintiffs have offered any evidence of an ostensibly willful violation, it is limited to suggestions of negligence by the City, which are insufficient as a matter of law to carry Plaintiffs' burden.  The Court should thus find that any violations of the FLSA by the City were not willful, and each Plaintiff's claim is limited to the period of two-years before he or she initiated or joined this litigation.

## **CONCLUSION**

For the above reasons, under Rule 52(c), the Court should enter judgment on partial findings in favor of the City and against Plaintiffs on all Counts.

DATED: May 10, 2021

Respectfully submitted,

DEFENDANT CITY OF MALDEN

By its attorneys:

*/s/ Alison H. Silveira*
Barry J. Miller (BBO # 661596)
bmiller@seyfarth.com
Alison Silveira (BBO # 666814)
asilveira@seyfarth.com
Timothy Buckley (BBO # 691200)
tbuckley@seyfarth.com
Seyfarth Shaw LLP
Seaport East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone: (617) 946-4800
Fax: (617) 946-4801

John J. Clifford (BBO # 630796)
john@cliffordkennylaw.com
David K. Kouroyen (BBO # 696559)
david@cliffordkennylaw.com
Clifford & Kenny, LLP
31 Schoosett St., Suite 405
Pembroke, MA 02359
Telephone: (781) 924-5796

## CERTIFICATE OF SERVICE

I hereby certify that, on May 10, 2021, a true and correct copy of the foregoing document was filed electronically through the Court's ECF system, which will send notice of this filing to all counsel of record.

*/s/  Alison H. Silveira*

69871823v.9