UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JACK OWENS, JEFFREY DREES, KATELYN MURPHY, PATRICK MANOLIAN, SCOTT MANN, and SEAN HUSSEY, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF MALDEN, <br><br> Defendant. | Civil Action No. 1:19-cv-11835-WGY |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' PROPOSED FINAL
JUDGMENT REGARDING CITY OF MALDEN'S VIOLATION OF THE
MASSACHUSETTS WAGE ACT M.G.L. c. 149, § 148 PURSUANT TO ECF NO. 271**

Throughout the course of this action, Plaintiffs have proffered estimates of their ostensible damages that are unsupported by or contrary to the record evidence. In an extension of that pattern, the damages calculations that Plaintiffs submitted in support of their Proposed Final Judgment Regarding City of Malden's Violation of the Massachusetts Wage Act M.G.L. c. 149, § 148 Pursuant to ECF No. 271 (Dkt. 277, "Plaintiffs' Third Proposal") are rife with errors and cannot serve as the basis for a final judgment in this case. Plaintiffs have calculated their proposed damages award in a manner that is inconsistent with this Court's orders and the trial evidence, as detailed in Section II herein. Plaintiffs have further improperly inflated their request for prejudgment interest, as detailed in Section III herein.

In an effort to move this matter towards final judgment, the City has corrected each of Plaintiffs' errors, and is including as **Exhibit 1** hereto a revised version of Plaintiffs' damages calculations that incorporates these changes. As reflected Section IV, *infra*, pursuant to this Court's orders, final judgment in this case should enter in the amount of not more than

1

$4,162,613.67, inclusive of statutory treble damages, and not more than $452,212.89 in prejudgment interest.[1]

## I. Plaintiffs' Third Proposal Continues to Apply Improper Methodology that Is Not Supported By Record Evidence.

By its February 15, 2022 Order (Dkt. 271, the "February 15 Order")), the Court ordered Plaintiffs to submit damages calculations "supported by citations to the specific exhibits, admitted as evidence at trial, that support the damages award." February 15 Order, at 3 n.2. Plaintiffs chose to re-engage Michelle Smith, CPA to perform the calculations that they submit in support of their Third Proposal. Dkt. 277-1 (the "Second Smith Report"). Unfortunately, similar to her prior calculations, which the Court found "fail[ed] for lack of evidence" (Dkt. 264, at 5), Ms. Smith's revised calculations materially contradict this Court's orders and the record evidence in this case, and must be rejected.

### A. Plaintiffs' Third Proposal Applies the Incorrect Statute of Limitations.

On September 24, 2021, this Court found that "Plaintiffs who have suffered damages up to the start of an action may collect damages incurred *throughout the applicable limitations period*." September 24, 2021 Order (Dkt. 264, the "September 24 Order"), ¶2 (emphasis added). It then went on to rule that "the applicable limitations period began August 28, 2016 and ended August 29, 2019, exactly." *Id.* Plaintiffs and Ms. Smith ignore the September 24 Order, and – without citation to any record evidence or any explanation for their departure from the Order – calculate damages allegedly owing to Plaintiffs for details worked between August 22, 2016 (6 days prior to the start of the limitations period) and April 8, 2021 (nearly 20 months past the period of time

---

[1] The City intends to appeal any adverse judgment entered on the merits of Plaintiffs' claims and reserves all such rights.

the Court has ruled is at issue in this case).[2] *See generally* Plaintiffs' Third Proposal, at Dkt. 277-3 (excel spreadsheet in support of Plaintiffs' damages calculations).

The City's revised version of Plaintiffs' damages calculations is consistent with the Court's September 24 Order. While the City has listed the details worked either before August 28, 2016 or after August 28, 2019 in its **Exhibit 1**, it has attributed $0.00 as owing for such details.

      B.      Plaintiffs' Third Proposal Seeks Damages for City Details,
             Despite Count II Being Limited to Private Details.

By Count II of their Amended Complaint, Plaintiffs claim that the City "violated Massachusetts General Laws chapter 149, section 148 by deducting a ten percent administrative fee from the Plaintiffs' wages earned *for private detail work*." Corrected Memorandum of Decision, dated October 26, 2021 (Dkt. 267, the "October 26 Order"), at 17 (emphasis added) (*citing* Am. Compl., ¶¶ 34, 47-48). Nowhere in any of its Orders does the Court find that the City violated the Wage Act in payment to Plaintiffs for work they performed on City Details – *i.e.*, details requested by any of the City Departments listed on Trial Exhibit 45. *See id.* at 8-9. It did not. The Court's judgment in favor of Plaintiffs regarding Count II is thus explicitly limited to a finding that the City violated the Wage Act as to work performed by Plaintiffs on Private Details only. *Id.* at Section III(A) ("Violation of the Wage Act For Private Details").

Despite this Court's clear Order, Ms. Smith's damages calculations include damages allegedly incurred for work performed by Plaintiffs on City Details, including details requested by

---

[2] The City intends to appeal the Court's ruling as to the applicable statute of limitations period. Plaintiffs first filed a non-payment of wages complaint with the Attorney General's Office on June 9, 2021. *See* Plaintiffs' Letter to Lauren Moran, Chief, Fair Labor Division, Attorney General's Office (Dkt. 251-1), dated June 9, 2021. The statute of limitation applicable to this case is, therefore, June 9, 2018 through the date of trial in this action. *See* G.L. c. 149, § 150 (three-year statute of limitations for civil enforcement actions); Attorney General Advisory, 98/2; *Tigges v. AM Pizza, Inc*., Nos. 16-10136-WGY, 16-10474-WGY; 2016 WL 4076829, at *4 n. 9 (D. Mass. Aug. 24, 2016) (applying statute of limitations in civil case from date of pre-suit AG filing).

"Board of Health Malden," "City of Malden," "City of Malden DPW," "City of Malden Waterworks & Engineering," "Malden DPW Traffic Division," "Malden High School," "Malden Library," "Malden Traffic," "Malden Water," "Mayor's Office City of Malden," "Polls,"[3] and "Water Dept City of Malden."  Again, Plaintiffs submit no evidentiary support or other rationale for the inclusion of these details in their Third Proposal; there is none, and details performed for each of these City Departments should be excluded from Plaintiffs' damages calculations.

The City's revised version of Plaintiffs' damages calculations is consistent with scope of the details at issue in Count II and the Court's October 26 Order.  While the City has listed the details worked for the City in **Exhibit 1**, it has attributed $0.00 as owing for such details.

### C. Plaintiffs Calculate Damages Amounts by Pyramiding Multipliers, without Evidentiary Support.

Plaintiffs' Third Proposal includes the application of multipliers on top of multipliers to inflate the hourly rate for details to rates that, in some cases, exceed ten times the officer's base hourly rate, leading to claims for detail work as high as $426.94 per hour.  Plaintiffs and Ms. Smith rely exclusively on Trial Exhibits 23-28 (the City's records showing details worked and amounts paid to officers) as support for their calculations of the damages owed to Plaintiffs, as reflected in Plaintiffs' Third Proposal.  *See* Second Smith Report, at 5-6 ("Procedures for Obtaining Evidence").  In relevant part, Ms. Smith cites to "'Multiplier Level[s]' used by the detail clerk," to establish the applicable rates of pay for various types of details.  *Id.* at 7.  Ms. Smith attributes a "Level" to each detail by compounding each of the Multipliers that she believes applied to such detail.[4]  Second Smith Report, at 9 ("Base Rates and Multiplier Calculations-Corrected Rates").

---

[3] While Polls are not listed on Exhibit 45, they are coordinated by the City Clerk's Office, as recognized by Article 24, § 5 of the Collective Bargaining Agreement (Trial Exhibit 5), which contemplates that "the City can order an officer or officers to work the polls . . ."

[4] Ms. Smith's report attributes five Levels to "Regular Details":  Base (Base); II (Base times 1.5); III (Base x 1.5 x 1.5); IV (Base x 1.5 x 1.5 x 1.5); V (Base x 1.5 x 1.5 x 1.5).  It similarly attributes six Levels to

4

She then applies a "corrected rate to the hours obtained from the raw data," at the various recalculated "Multiplier Levels," in order to calculate damages in this case. *Id*.

In finding that the City violated the Wage Act, the Court concluded that certain "Multipliers" of the base detail rate for Private Details are "contemplated in the Agreement and . . . must be taken into account when calculating an applicable detail rate." October 26 Order, at 45; *id.* at 3-4 ("Evidence presented at trial . . established that there are several enhancements (the 'Multipliers') to detail rates for detail work performed under specific conditions – strike action, after midnight, detail work by supervisors, detail work on holidays and detail work in excess of eight hours. . .") (*citing* Dkt. 260 (Molis Testimony) at 127-128; Trial Ex. 12 (Malden Police Department Detail Rules & Procedures, ¶¶ I.17, I.21, IV.3.))[5]  Nowhere, however, do either the applicable Collective Bargaining Agreement (Trial Exhibit 5) or the Malden Police Department Detail Rules & Procedures (Trial Exhibit 12) contemplate pyramiding those Multipliers in the manner applied by Ms. Smith, whereby she multiplies premium rate upon premium rate for a single detail. *See* 277-1, at 7-8. Plaintiffs submit no trial evidence to support for the pyramiding of Multipliers, nor do they submit "an affidavit to that effect," as the Court invited them to do. *See* February 15 Order, at 3 n.2. Ms. Smith's application of "Multiplier Levels" that exceed the

---

"Strike Details": B (Base); SI (Base x 2.0); SII (Base x 2.0 x 1.5); SIII (Base x 2.0 x 1.5 x 1.5); SIV (Base x 2.0 x 1.5 x 1.5 x 1.5); SV (Base x 2.0 x 1.5 x 1.5 x 1.5 x 1.5). Each Level has a corresponding "corrected rate," which varies based upon which of the six time periods Ms. Smith identified that it falls within. Second Smith Report, at 9 ("Base Rates and Multiplier Calculations-Corrected Rates").

[5] The City intends to appeal the Court's ruling that the parties' collective bargaining agreement is a "partially integrated document." Dkt. 264, at 3, 41-45. Further, to the extent the collective bargaining agreement is determined to be partially integrated, the Court's findings that Plaintiffs are entitled to pay at a higher rate than they received did not give effect to the past practices doctrine, the fact that the parties had at all times proceeded on the mutual understanding that the rates paid were the rates as prescribed by the collective bargaining agreement, or the fact that the rates paid had been calculated and established by members of the Plaintiff group. *See* Defendant's Post-Trial Brief (Dkt. 239), at 12-13, 14-16.

Multipliers themselves grossly overstates the damages to be awarded based on the Court's prior rulings in this matter.

The City's revised version of Plaintiffs' damages calculations eliminates the Plaintiffs' attempt to pyramid Multipliers upon Multipliers. For all "Regular Details" that Ms. Smith identified as Level III, IV, or V, the City replaced the rates Ms. Smith attributed to them with the "corrected rates" Ms. Smith identified for Level II (base rate times 1.5) for the same time period. For all "Strike Details" that Ms. Smith identified as Level SII, SIII, SIV, SV, the City replaced the rates Ms. Smith attributed to them with the "corrected rates" that Ms. Smith identified for Level SI (base rate times 2.0) for the same time period.[6] The City then compared the resulting amounts owed using said corrected rates to the amounts actually paid for those details. To the extent that the former exceeded the latter, the City identified those as damages owed to Plaintiffs pursuant to the Court's October 26 Order.[7]

> D.      <u>Ms. Smith Continues to Apply Manual Adjustments that Permeate and Undermine Her Calculations.</u>

In its September 24 Order, the Court unequivocally found that Ms. Smith's "'manual adjustments' fail for lack of evidence and shall not be included in the calculation of damages for the Wage Act Claim." Dkt. 264, at 4. While Plaintiffs eliminated many of Ms. Smith's manual adjustments from the calculations that they submitted with their Third Proposal, they did not resolve them all. In her Second Report, Ms. Smith states:

> It should be noted that overnight shifts or partial overnight shifts were most often reported as an extension of the previous day and not the actual calendar date. While this was counterintuitive for some testing procedures, it did serve to help identify continuous shifts. The shift in the example above shows a rate change at 8/31/16 at

---

[6] This approach ensures that for each detail worked, Plaintiffs get the maximum rate Multiplier arguably attributable to that detail, but avoids the pyramiding approach that is not supported by trial evidence.

[7] To the extent that the amount paid by the City exceeded the recalculated amount now allegedly owed, the City simply zeroed out the amount owed.

> midnight (0:00), however it was actually 9/1/16 at midnight. This was an important factor to consider in identifying both holiday multipliers and overtime multipliers.

Smith Second Report, at 6. She cites no record evidence to support her speculation that the dates reflected in Trial Exhibits 23-28 as occurring at midnight were incorrectly reflected as the prior date; again, there is none. Ms. Smith's speculation that the trial evidence was incorrect is inappropriate, and her manual adjustments to record evidence on what she describes as an "important factor" to her analysis must be rejected.

The City has identified 628 instances in Plaintiffs' Third Proposal where Ms. Smith applied an overtime Multiplier solely as a result of her manual adjustment to the dates worked for these midnight details. The City's revised version of Plaintiffs' damages calculations, as reflected in **Exhibit 1**, reverses this error and removes the overtime Multiplier applied by Ms. Smith where the record evidence does not support its application.[8]

E.  Ms. Smith's Calculations Do Not Mirror the Descriptions She Provides.

In several instances, Plaintiffs' representations to the Court regarding what Ms. Smith did to conduct her analysis are inconsistent with the analysis itself. For example, Ms. Smith sets out the specific days on which she claims that she applied a "Holiday pay" Multiplier, citing to the Malden Police Detail Rules & Procedures. Second Smith Report, at 12. On several occasions, however, Ms. Smith applied a holiday Multiplier for a date not on that list. *Compare* Second Smith Report, at 12 *with* Table included in footnote 9, *infra*.[9] The City's revised version of Plaintiffs'

---

[8] Records where the improper overtime Multiplier was removed are reflected with an "N/A" or "N/A X" in the "Overtime" Multiplier column of **Exhibit 1**.

[9]

| Fitzpatrick, S. #10638 | 2016 | Aggregate Industries | 11/10/16 0 |
| Amirault, J. #10601 | 2017 | National Grid Electric | 7/3/17 0 |
| Kruschewsky, G. #12819 | 2017 | Papas | 11/22/17 0 |
| Bellavia, S. #10605 | 2018 | Walgreens Malden | 12/24/17 0 |
| Bailey, P. #10603 | 2020 | National Grid Gas | 2/16/20 0 |

damages calculations, as reflected on **Exhibit 1**, eliminate the "Holiday pay" Multiplier for details worked on these dates.[10]

Likewise, Ms. Smith states that she "excluded" from her analysis any detail for which the trial evidence was "missing information in the raw data such as dates, time, locations." Second Smith Report, at 17 ¶ 3. In fact, she included in her analysis, and therefore Plaintiffs seek damages allegedly incurred as a result of, 29 details that show no location at all. The City's revised version of Plaintiffs' damages calculations, as reflected on **Exhibit 1**, attributes "$0.00" to each of these details, as there is no evidentiary basis to conclude these purported details were Private Details subject to the Court's October 26 Order.

## II.     Plaintiffs' Interest Calculations Are Inflated.

In its September 24 Order, the Court ruled that the City is subject to prejudgment interest pursuant to G. L. c. 231, § 6H. September 24 Order, at 5. The Court further ruled, as a result, that the proper interest rate is "twelve per cent per annum from the date of commencement of the action . . ." *Id.*[11]  Setting aside the issue of the proper interest rate, Plaintiffs seek to require the City to pay interest, at the 12% per annum rate, for all details on which they seek to recover, irrespective of the date when that detail was worked. *See* Plaintiffs' Third Proposal, at 11, ¶ 2.[12]

---

[10] Records where the improper "Holiday pay" was eliminated are reflected with an "N/A" in the "Holiday" Multiplier column of **Exhibit 1**.

[11] The City intends to appeal the Court's ruling as to the applicability of G.L. c. 231, § 6H, because the City is a subdivision of the Commonwealth. Pursuant to G.L. c. 231, § 6I, "Interest required to be paid by the commonwealth pursuant to this section shall be calculated at a Weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding date of the judgment; provided, however, that such interest shall not exceed the rate of ten percent per annum." The appropriate rate of interest is thus less than 3%, based on current market interest rates.

[12] Plaintiffs state that the prejudgment interest calculations included in their Third Proposal are calculated as running "from August 28, 2019 . . . through May 2, 2022." Plaintiffs' Third Proposal, at 11, ¶ 2. However, the amount of interest they seek does not reflect this calculation. It appears that Plaintiffs seek to recover prejudgment interest through May 16, 2022, *not* May 2, 2022 (*i.e.*, the date that they filed the

In other words, Plaintiffs apply one interest rate to the entire amount of damages, dating back to the date of the filing of the Complaint, as if all of the details for which the Court has ruled that they were underpaid had *already been worked* as of the date of the filing of the Complaint. Plaintiffs' methodology would be correct, if they sought only to recover for details worked within the Court-ordered statute of limitations periods. *See* Section IA, *supra*. Assuming that the Court in fact only allows Plaintiffs to recover under Count II for damages incurred during the period August 28, 2016 to August 29, 2019, *see* September 24 Order, ¶ 2, the total recoverable prejudgment interest in this case, applying a rate of 12% per annum through May 16, 2022, is $452,416.86. The City has included individually attributable pre-judgment interest in its calculations reflected in Section IV, *infra*.[13]

### III. Paragraph 6 of Plaintiffs' Third Proposal is Inappropriate.

Finally, Plaintiffs request that this Court order, as part of its final judgment in this case, "[t]he City of Malden is Ordered to fully satisfy this Judgment by remitting payment for the full amounts declared herein by causing payment . . . counsel for the Plaintiffs' [sic] within thirty (30) days of the entry of this Judgment." Plaintiffs' Third Proposal, at 11, ¶ 6.

Paragraph 6 of Plaintiffs' Third Proposal must be stricken or modified. The Court should order that the judgment be executed within 30 days of issuance thereof if no appeal is noticed, or

---

Third Proposal). The City has similarly used May 16, 2022 as the date through which prejudgment interest should be recovered.

[13] If the Court permits Plaintiffs to recover for details worked after August 29, 2019, interest must be individually calculated to run from the date that they were paid an ostensibly insufficient rate for such post-Complaint details – *i.e.*, the date of the relevant Plaintiff's injury for such detail. *See O'Malley v. O'Malley*, 419 Mass. 377, 381 (1985) (finding that, in a contract action, while plaintiffs are "entitled to an award of prejudgment interest" for damages that they incurred after the filing of the complaint, the interest runs from the date of those damages, not from the date of filing); *see also Pantazis v. Tsourides*, 2009 WL 2603147, *19 (Mass. Super. July 8, 2009) (same, finding "prejudgment interest . . . should not be applied until the [damages] had actually been generated . . . Interest should be charged only after the [damages] have been made"). The City has not made these calculations, in light of the Court's Order regarding the applicable statute of limitations.

within 30 days after such judgment is affirmed on appeal. The City notes that it will move to stay the execution and proceed with an appeal, without the posting of a supersedeas bond, as permitted in the discretion of the Court under Fed. R. Civ. P. 62(b).[14]

## IV.    The Appropriate Final Judgment Award, In Light of This Court's Orders.

Correcting for all of the inaccuracies in Plaintiffs' Third Proposal (with the exception of the "manual adjustments" impacting midnight details), and reserving all rights with respect to its forthcoming appeal in this matter, the City submits that the Court's final judgment in Plaintiffs' favor should reflect, at most, the following individualized damages and interest amounts:

| Officer | Single Damages | Treble Damages | Prejudgment Interest |
|---|---|---|---|
| Amirault, J. #10601 | $8,727.31 | $26,181.93 | $2,844.35 |
| Bailey, P. #10603 | $19,400.06 | $58,200.16 | $6,322.74 |
| Barthelmes, R. #10604 | $16,722.26 | $50,166.77 | $5,450.01 |
| Bellavia, S. #10605 | $45,215.00 | $135,645.01 | $14,736.19 |
| Bellavia, S. #14516 | $24,685.58 | $74,056.75 | $8,045.37 |
| Borges, A. #15597 | $12,811.85 | $38,435.55 | $4,175.56 |
| Bourque, D. #13485 | $10,043.92 | $30,131.76 | $3,273.45 |
| Bowie-Pierce, N. #15600 | $515.50 | $1,546.50 | $168.01 |
| Calhoun, T. #12822 | $20,751.51 | $62,254.52 | $6,763.20 |
| Carlin, C. #10609 | $1,064.71 | $3,194.13 | $347.00 |
| Carroll, S. #10610 | $13,733.99 | $41,201.97 | $4,476.10 |
| Casaletto, M. #10611 | $7,402.10 | $22,206.30 | $2,412.45 |
| Casella, J. #10612; #15958 | $6,793.93 | $20,381.79 | $2,214.24 |
| Catana, D. #10618 | $35,699.57 | $107,098.72 | $11,634.98 |
| Centore (F. Murphy), K. #14513 | $8,008.18 | $24,024.54 | $2,609.98 |
| Charpentier, A. #10668 | $287.64 | $862.92 | $93.75 |
| Chen, A. #12903 | $0.00 | $0.00 | $0.00 |
| Choi, E. #10613 | $3,985.59 | $11,956.77 | $1,298.96 |
| Clemente, R. #10620 | $14,573.88 | $43,721.64 | $4,749.83 |

---

[14] The City is well able satisfy any adverse judgment that may withstand appeal. It is a financially sound municipality, and the City is working to reserve the funds necessary to satisfy any judgment in a separate, dedicated account. Under the circumstances, obtaining a supersedeas bond would amount to a waste of taxpayer funds. *See e.g. Cipes v. Mikasa, Inc.*, 404 F. Supp. 2d 367, 369-70 (D. Mass. 2005) (quoting *Dillon v. City of Chicago*, 866 F.2d 902, 904-05 (7th Cir. 1988)).

| | | | |
|---|---|---|---|
| Cloherty, C. #14451 | $6,349.50 | $19,048.49 | $2,069.39 |
| Co, K. #10614 | $8,140.06 | $24,420.18 | $2,652.96 |
| Connelly, D. #14511 | $12,699.93 | $38,099.79 | $4,139.08 |
| Correale, R. #10622 | $9,088.13 | $27,264.39 | $2,961.95 |
| Cox, N. #10623 | $16,360.52 | $49,081.56 | $5,332.12 |
| Crannell, J. #10624; #16275 | $8,151.22 | $24,453.66 | $2,656.59 |
| Dadaille, S. #15990 | $540.05 | $1,620.15 | $176.01 |
| Delaney, J. #10628 | $4,360.80 | $13,082.40 | $1,421.24 |
| D'Entremont, C. #13650 | $8,945.75 | $26,837.25 | $2,915.54 |
| Dicarlo, C. #15359 | $2,049.91 | $6,149.72 | $668.09 |
| Dillon, S. #14860 | $1,895.14 | $5,685.42 | $617.65 |
| Disalvatore, R. #10631 | $5,623.68 | $16,871.04 | $1,832.83 |
| Doherty, R. #14515 | $10,930.68 | $32,792.04 | $3,562.46 |
| Donovan, R. #10632; #16019 | $23,277.52 | $69,832.57 | $7,586.47 |
| Drees, J. #10633 | $14,849.79 | $44,549.36 | $4,839.75 |
| Ferrick, K. #10636; #16022 | $21,654.53 | $64,963.57 | $7,057.51 |
| Ferry, B. #16236 | $0.00 | $0.00 | $0.00 |
| Fitzpatrick, E. #10637 | $9,222.08 | $27,666.24 | $3,005.60 |
| Fitzpatrick, S. #10638 | $31,467.09 | $94,401.28 | $10,255.56 |
| Fortier, R. #10639 | $15,836.98 | $47,510.93 | $5,161.49 |
| Franzese, D. #10640 | $16,120.88 | $48,362.63 | $5,254.01 |
| Froio, J. #10641 | $21,622.34 | $64,867.02 | $7,047.02 |
| Gatcomb, M. #10642 | $12,532.59 | $37,597.77 | $4,084.54 |
| Gennetti, S. #10643; #10080 | $23,254.07 | $69,762.22 | $7,578.82 |
| Giordano, M. #10645 | $24,936.57 | $74,809.72 | $8,127.17 |
| Gomez, E. #15077 | $13,593.00 | $40,778.99 | $4,430.14 |
| Grenier, A. #15612 | $1,959.55 | $5,878.65 | $638.64 |
| Griffiths, C. #10647 | $7,521.93 | $22,565.79 | $2,451.50 |
| Halloran, P. #10649 | $19,504.87 | $58,514.61 | $6,356.91 |
| Hassenfratz (F. Mcadam), J. #10670 | $555.46 | $1,666.37 | $181.03 |
| Headley, T. #10650 | $23,179.83 | $69,539.49 | $7,554.63 |
| Holland, M. #10653 | $4,787.32 | $14,361.96 | $1,560.25 |
| Hopkins, P. #10654 | $50,697.07 | $152,091.22 | $16,522.87 |
| Hussey, S. #14666 | $21,239.92 | $63,719.76 | $6,922.38 |
| Israelson, E. #10656 | $26,823.46 | $80,470.38 | $8,742.13 |
| Keefe, J. #15308 | $6,280.38 | $18,841.14 | $2,046.86 |
| Kelley, J. #10657 | $21,110.14 | $63,330.40 | $6,880.08 |
| Kelley/Nusum, R. #10689 | $400.16 | $1,200.48 | $130.42 |
| Killion, K. #10658 | $5,945.99 | $17,837.96 | $1,937.88 |

| | | | |
|---|---|---|---|
| Kinnon, P. #15373 | $11,061.54 | $33,184.61 | $3,605.11 |
| Kruschewsky, G. #12819 | $30,946.58 | $92,839.74 | $10,085.92 |
| Lamour, J. #13075 | $8,892.95 | $26,678.84 | $2,898.33 |
| Langston, M. #10660 | $13,589.15 | $40,767.45 | $4,428.89 |
| Lanni, J. #10661 | $11,331.47 | $33,994.40 | $3,693.08 |
| Law, K. #10662 | $18,616.65 | $55,849.94 | $6,067.42 |
| Lopez, G. #14667 | $1,199.58 | $3,598.74 | $390.96 |
| Lubinger, S. #10666 | $11,456.04 | $34,368.11 | $3,733.68 |
| Luongo, M. #10667 | $12,330.70 | $36,992.10 | $4,018.74 |
| Macdonald, M. #10674 | $20,560.41 | $61,681.23 | $6,700.92 |
| Mackay, G. #10675 | $37,737.17 | $113,211.52 | $12,299.06 |
| Maher, A. #14517 | $3,501.90 | $10,505.70 | $1,141.32 |
| Mann, S. #10676 | $14,893.08 | $44,679.24 | $4,853.86 |
| Manolian, P. #12787 | $25,675.55 | $77,026.66 | $8,363.22 |
| Martinez, J. #16237 | $0.00 | $0.00 | $0.00 |
| Mcgahey, L. #10671 | $9,277.91 | $27,833.72 | $3,023.80 |
| Mckenna, K. #10672 | $20,829.78 | $62,489.33 | $6,788.71 |
| Mcleod, P. #10673 | $10,843.86 | $32,531.57 | $3,534.16 |
| Mcneal, E. #14838 | $21,136.66 | $63,409.98 | $6,888.73 |
| Medeiros, J. #10679 | $1,880.26 | $5,640.77 | $612.80 |
| Mitchell, P. #10678 | $3,543.71 | $10,631.12 | $1,154.94 |
| Montina, M. #10682 | $14,347.89 | $43,043.66 | $4,676.17 |
| Montoya, J. #10681 | $13,907.16 | $41,721.48 | $4,532.53 |
| Mulcahy, S. #10730 | $9,783.84 | $29,351.52 | $3,188.69 |
| Munyon, S. #14450 | $4,747.46 | $14,242.38 | $1,547.26 |
| Newnan, B. #10688 | $14,748.14 | $44,244.40 | $4,806.62 |
| Noble, S. #10687 | $12,305.22 | $36,915.66 | $4,010.44 |
| O'Brien, R. #10691 | $4,501.29 | $13,503.87 | $1,467.03 |
| Owens, J. #10692 | $16,985.51 | $50,956.52 | $5,535.81 |
| Paci, S. #14120 | $11,266.70 | $33,800.10 | $3,671.97 |
| Polston, M. #10694 | $6,218.49 | $18,655.46 | $2,026.69 |
| Powell, M. #10696 | $5,149.75 | $15,449.24 | $1,678.37 |
| Quinn, M. #15076 | $13,069.72 | $39,209.16 | $4,259.60 |
| Redmond, J. #14668 | $19,637.72 | $58,913.15 | $6,400.20 |
| Reynolds, J. #10698 | $13,027.87 | $39,083.60 | $4,245.96 |
| Rowe, W. #10701; #15959 | $9,575.57 | $28,726.71 | $3,120.81 |
| Russell, K. #16273 | $0.00 | $0.00 | $0.00 |
| Selfridge, C. #15799 | $12,626.83 | $37,880.49 | $4,115.26 |
| Selfridge, R. #10705 | $19,160.58 | $57,481.73 | $6,244.69 |

| | | | |
|---|---|---|---|
| Shaw, K. #15991 | $2,528.50 | $7,585.48 | $824.07 |
| Sheridan, K. #10706; #16020 | $6,366.03 | $19,098.09 | $2,074.78 |
| Siegel, A. #14514 | $16,830.62 | $50,491.85 | $5,485.33 |
| Sylva, D. #15372 | $0.00 | $0.00 | $0.00 |
| Tilley, B. #10712 | $18,070.66 | $54,211.97 | $5,889.48 |
| Tuxbury, E. #10714 | $14,184.67 | $42,554.01 | $4,622.98 |
| Wadland, R. #10716 | $16,521.07 | $49,563.20 | $5,384.44 |
| Walker, J. #10717 | $23,426.28 | $70,278.83 | $7,634.95 |
| Washington, C. #15143 | $4,747.82 | $14,243.45 | $1,547.38 |
| Watkins, K. #14857 | $15,880.47 | $47,641.41 | $5,175.66 |
| Wilson, K. #10718 | $2,543.44 | $7,630.32 | $828.94 |
| Yanovitch (F. Selfridge), A. #16012 | $0.00 | $0.00 | $0.00 |
| Yung, D. #14045 | $12,142.31 | $36,426.92 | $3,957.34 |
| **Total** | **$1,387,537.89** | **$4,162,613.67** | **$452,212.89** |

The City further submits that an award of not more than $58,862.50 in attorneys' fees and not more than $5,540.25 in costs is an appropriate award in this case. In support of these amounts, the City refers the Court to its Opposition and Response to [Plaintiffs' Proposed] Attorney's Fees and Cost Award (Dkt. 276), filed simultaneously herewith.

DATED: June 16, 2022                    Respectfully submitted,

DEFENDANT CITY OF MALDEN

By its attorneys:

*/s/ Alison H. Silveira*
Barry J. Miller (BBO # 661596)
   bmiller@seyfarth.com
Alison Silveira (BBO # 666814)
   asilveira@seyfarth.com
Timothy Buckley (BBO # 691200)
   tbuckley@seyfarth.com
Seyfarth Shaw LLP
Seaport East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone: (617) 946-4800
Fax: (617) 946-4801

John J. Clifford (BBO # 630796)
   john@cliffordkennylaw.com
David K. Kouroyen (BBO # 696559)
   david@cliffordkennylaw.com
Clifford & Kenny, LLP
31 Schoosett St., Suite 405
Pembroke, MA 02359
Telephone: (781) 924-5796

**CERTIFICATE OF SERVICE**

    I hereby certify that, on June 16, 2022, a true and correct copy of the foregoing document was filed electronically through the Court's ECF system, which will send notice of this filing to all counsel of record.

                                                           */s/ Alison H. Silveira*