```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS
```

```
_____
                                     )
JACK OWENS, JEFFREY DREES, KATELYN   )
MURPHY, PATRICK MANOLIAN, SCOTT      )
MANN, and SEAN HUSSEY, on behalf     )
of themselves and all others         )
similarly situated,                  )
                                     )
                    Plaintiffs,      )
                                     )
        v.                           )     CIVIL ACTION
                                     )     NO. 19-11835-WGY
CITY OF MALDEN,                      )
                    Defendant.       )
_____)
```

YOUNG, D.J.                                              July 28, 2022

## JUDGMENT

On December 1, 2021, this Court issued a Corrected Memorandum of Decision, outlining the defendant City of Malden's (the "City") liability on both counts of the Plaintiffs' claims: the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., claim (count I) and the Massachusetts Wage Act ("Wage Act"), Mass. Gen. Laws ch. 149, § 148, claim (count II). See Corrected Mem. Decision, ECF No. 267. Subsequently, this Court dismissed the FLSA claim (count I) as to all Plaintiffs without prejudice for failure to establish individual FLSA eligibility. See Feb. 15, 2022 Order, ECF No. 271.

This Court now awards judgment on the remaining Wage Act claim (count II). The parties have twice received instruction

[1]

from this Court regarding what damages may be factored into their proposed final judgments.  See id. 70-74; Sept. 24, 2022 Order, ECF No. 264.

In response to this Court's most recent order regarding damages, see Feb. 15, 2022 Order, the Plaintiffs submitted a proposed final judgment, see Pls.' Proposed Final J. Regarding City of Malden's Violation Mass. Wage Act ("Pl.'s Proposed Final J."), ECF No. 277, which the City opposed, see Def.'s Resp. Pls.' Proposed Final J. Regarding City Malden's Violation Mass. Wage Act ("City's Opp'n"), ECF No. 281.  The parties' respective proposed final judgments fail to comply with this Court's instructive orders.  Accordingly, this Court describes the relevant problems with the proposed judgments and provides its solution and methodology for calculating the final judgment in this action.

First, as the City appropriately identifies, the Plaintiffs have in several instances applied the incorrect start date for the applicable damages period by including details worked from August 22, 2016 onward.  See City's Opp'n 2-3; see also Payroll Analysis Report 04.27.22, ECF No. 277-1.  This ignores the Court's prior determination that the applicable limitations period, and therefore the period for which Plaintiffs may collect damages, begins August 28, 2016.  See September 24, 2022 Order 3.  The City, however, appears to argue that because the

[2]

applicable statute of limitations period ended on August 29, 2019, this Court ought stop calculating damages occurring after that date.  See City's Opp'n 2-3.  This misapplies the Court's September 24, 2022 Order, which specifically responded to concerns regarding the start date for damages calculations.  See September 24, 2021 Order 1-2.  Damages taking place between the filing of the complaint and the entry of judgment can be considered by this Court and therefore ought be included in damages calculations.  See Forsythe v. Sun Life Fin., Inc., 475 F. Supp. 2d 122, 124-25 (D. Mass. 2007) (O'Toole) ("In civil actions generally, absent some express limitation, proof of damages is not restricted to the time before the filing of the complaint, and damages caused by a defendant's liability-producing conduct ordinarily may be proved through the time of trial and judgment.  Put another way, the inertial position is that damages occurring after the filing of a civil complaint may still be proved at trial."); see also Wellfleet Commc'ns. v. Dilan, Inc., CA93-06412, 1995 Mass. Super. LEXIS 493, at *11 (Feb. 8, 1995).  Therefore, this Court excludes all of the entries for damages before August 28, 2016 but includes all entries for damages taking place after the filing of the complaint.

Second, the City also correctly identifies that the Plaintiffs include entries for "City Details" in their damages

calculations.  See City's Opp'n 4; see also Payroll Analysis Report 04.27.22.  The allegations in the Plaintiffs' complaint, the evidence presented at the bench trial, and the sections of this Court's Memorandum of Decision pertaining to the Wage Act claim dealt only with "Private Details."  See Am. Compl. ¶¶ 34, 47-48, ECF No. 8; Corrected Mem. Decision.  Accordingly, the Court removes all entries identified as City Details: "Board of Health Malden," "City of Malden," "City of Malden DPW," "City of Malden Waterworks & Engineering," "Malden DPW Traffic Division," "Malden High School," "Malden Library," "Malden Traffic," "Malden Water," "Mayor's Office City of Malden," "Polls," and "Water Dept City of Malden."

Third, the City raises objections regarding Multipliers and manual adjustments.  See City's Opp'n 4-9.  As to the former concern, this Court has already rejected the City's arguments against the application of Multipliers in its decision on liability.  See Corrected Mem. Decision 45.  The City's arguments in that regard are equally inapplicable with regards to damages.  As to the latter objection, this Court is unpersuaded that the calculations the City identifies as "manual adjustments," can properly be so delineated.

Fourth, prejudgment interest is calculated at a rate of 12 percent per annum from the date of commencement of this action on August 28, 2019 to the date judgment enters on this case, see

[4]

Mass. Gen. Laws ch. 231, § 6H, based solely on the actual damages amount, not on trebled damages, see George v. Nat'l Water Main Cleaning Co., 477 Mass. 371, 381 (2017).  This Court agrees with the City, see City's Opp'n 8-9, that prejudgment interest cannot be calculated in the same manner for an entire damages award when part of the damages have taken place after the filing of the complaint, see Price Chopper, Inc. v. Consol. Bevs., LLC, No. 09-10617-FDS, 2012 U.S. Dist. LEXIS 83791, at *6 (D. Mass. June 18, 2012) (Saylor, J.).  For damages occurring after the filing of the complaint, interest does not begin to run at the date of the complaint's filing; instead, interest is taken to accrue from the date the damage occurred, or some approximation thereof.  See id.; see also Pantazis v. Tsourides, Nos. 107818, 99-2362-C, 2009 Mass. Super. LEXIS 210, at *28 n.16 (July 2, 2009).  This Court calculates prejudgment interest in the following manner: (1) for all the damages preceding the filing of the complaint (August 28, 2019), this Court multiplies the 12 percent per annum interest rate by the exact number of years that have passed since filing (2.915 years); (2) for each damage succeeding August 28, 2019, this Court applies a unique "year multiplier" to the 12 percent per annum rate based on the exact date the damage took place -- this year multiplier is

[5]

always less than 2.915 to reflect only the amount of time since the damage took place.[1]

Accordingly, judgment is entered in favor of the Plaintiffs on the Wage Act claim (count II), Mass Gen. Laws ch. 149, § 148, in the amount of **$7,538,815.28** in trebled damages and **$812,555.82** in prejudgment interest, in the manner described above and as detailed in Appendix I.

As to Attorney's Fees, this Court previously determined that Attorney's Fees ought be awarded "as to the **Wage Act claim only**, Mass. Gen. Laws ch. 149, § 150; no other attorney's fees

---

[1] For example, for a damage taking place on October 2, 2019, this Court applies a 2.820 year multiplier; for a damage taking place on December 10, 2020 this Court applies a 1.630 year multiplier; and for a damage taking place on April 7, 2021 this Court applies a 1.307 year multiplier.  To calculate the October 2, 2019 year multiplier this Court first determines that October 2, 2019 is the 275 day of the year and then uses the following formula to determine the appropriate multiplier for 2019: Oct. 2, multiplier for 2019 = (365-275)/365 = .247.  This multiplier is added to 2 (the combined multipliers for 2020 and 2021) and then added to .573 (the multiplier for 2022, which is calculated using July 28, 2022, the date of this judgment's entry, as the end date for the interest's accrual).  This results in the 2.820 multiplier mentioned above, which represents the unique year multiplier for October 2, 2019.  This methodology was applied uniformly to the dates occurring in 2020 and 2021 as well -- for example, for a date in 2021, the multiplier for 2021 equals (365-nth day)/365, which is then added to .573 for 2022 to generate the year multiplier for that unique date in 2021.  For 2020 this Court took into account that it was a leap year and adjusted the formulas accordingly by utilizing 366 days. The calculations are systematized using Excel and the prejudgment interest for each individual is summed from these unique calculations, which correspond to each independent instance of damage (each detail).

are to be included in the calculation." See Feb. 15, 2022 Order. Subsequently, the parties submitted proposed Attorney's Fees Awards. Pls.' Proposed Attorney's Fees & Cost Award ("Pls.' Attorney's Fees & Costs"), ECF No. 276; Def.'s Resp. Pl.'s Proposed Attorney's Fees & Cost Award ("Def.'s Attorney's Fees & Costs"), ECF No. 280.

"A reasonable [attorney's] fee typically is determined through the lodestar method, which involves multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008). In determining the number of hours spent by the attorney the Court may "eliminate time that was unreasonably, unnecessarily, or inefficiently devoted to the case" or that was dedicated to "failed claims." Id. Here, the parties disagree as to the number of hours spent on the Wage Act claim by counsel. Plaintiffs' counsel, Joseph A. Padolsky ("Padolsky"), claims he devoted 514.7 hours to the Wage Act Claim. See Pls.' Atty's Fees & Costs, Ex. 1, Aff. Counsel Supp. Pls.' Proposed Atty's Fees & Costs ("Padolsky Aff.") ¶ 20, ECF No. 276-1. The City instead contends that Padolsky spent 470.9 hours preparing the Wage Act claim. See Def.'s Attorney's Fees & Costs 7. After reviewing the time breakdown submitted by Plaintiffs, see Pl.'s Attorney's Fees & Costs, Ex. 7, Time & Cost Entries, ECF No. 276-7, this Court agrees with the

Defendant and determines that Padolsky is entitled to **470.9 hours** expended on the Wage Act claim.

In determining a reasonable hourly rate "courts look to a constellation of factors." Pérez-Sosa v. Garland, 22 F.4th 312, 325 (1st Cir. 2022). The "fee-seeker must carry the burden of establishing" the reasonableness of the rates sought. Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 16 (1st Cir. 2011); CH Properties, Inc. v. First Am. Title Ins. Co., 204 F. Supp. 3d 416, 419 (D.P.R. 2016).

"There is no universal market rate for legal services. Rather, '[r]easonable hourly rates will vary depending on the nature of the work, the locality in which it is performed, the qualifications of the lawyers, and other criteria.'" Hutchinson ex rel. Julien, 636 F.3d at 16 (quoting United States v. One Star Class Sloop Sailboat, 546 F.3d 26, 38 (1st Cir. 2008)). Generally, the "reasonable hourly rate" is determined by looking to the "rate of compensation prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation." McLaughlin by McLaughlin v. Boston Sch. Comm., 976 F. Supp. 53, 60 (D. Mass. 1997) (Garrity, J.). "[T]he rate that private counsel actually charges for her services, while not conclusive, is a reliable indicium of market value." Sloop, 546 F.3d at 40; see also Hutchinson, 636 F.3d at 16 ("One such rule of thumb is that the

rate that a private lawyer actually charges to clients in the ordinary course of his practice, though not conclusive, is a useful indicator of market value."); Connolly v. Harrelson, 33 F. Supp. 2d 92, 95-96 (D. Mass.) (taking what an attorney actually charged -- and was seeking as fees -- as an appropriate fee award albeit "on the thrifty side of rates for comparable attorneys in Boston"), aff'd, 201 F.3d 426 (1st Cir. 1999).  In effect, the flexible standard "allows the court to use counsel's standard rate, or the prevailing market rate in the forum, or a reasonable rate in between."  Sloop, 546 F.3d at 40.

    The Plaintiffs argue that a reasonable fee is an hourly rate of $500.  See Pls.' Attorney's Fees & Costs 17; Padolsky Aff. ¶ 29.  Padolsky does so by citing to awards made in arguably similar cases completed by attorneys of arguably comparable experience -- these awards ranged from $350 to $735.  See id. 14-17.  The City argues this Court ought apply the fee actually charged by Padolsky to the City of Malden for professional services rendered on behalf of the Malden Police Department, for which his hourly rate is $250.  See Def.'s Attorney's Fees & Costs 2; id. Ex. 1, Aff. Alison H. Silveira Supp. Def.'s Resp. Pl.'s Proposed Attorney's Fees & Costs ¶¶ 2-6, ECF No. 280-1.  This Court concludes a midway point between the Plaintiffs' and the City's proposed award to be most

reasonable. Therefore, Padolsky shall be awarded attorney's fees at a rate of **$400.00 per hour.**

Accordingly, the Plaintiffs are entitled to **$188,360.00 in attorney's fees.**

As for costs, the Plaintiffs seek $5,555 in costs sustained as court costs, deposition fees, and copying costs. See Pls.' Attorney's Fees & Costs 18. The Plaintiffs have met their burden by providing supporting documentation for these fees and therefore are awarded **$5,555.00 in costs**.

The Plaintiffs also seek expert witness fees in the amount of $34,593.75. See id. An award of expert witness fees on the Wage Act Claim[2] is appropriate if it is backed by "independent documentation to support the reasonableness of that expert fee, such as invoices detailing how the expert's time was spent or evidence of comparable expert fees." Ellicott v. Am. Cap. Energy, Inc., No. CV 14-12152-FDS, 2017 WL 1224537, at *4 (D. Mass. Apr. 3, 2017) (Saylor, J.). Here, the invoices generally describe that $28,750 of these fees were devoted to the Payroll Analysis Report, and the remaining $5,843.75 were devoted to the Procedures Engagement and Addendum to that Engagement in 2021.

---

[2] The City's argument that the Wage Act is "silent on expert fees" and therefore that the Plaintiffs are not entitled to them, see Def.'s Attorney's Fees & Costs 9, is not supported by any precedent comparable to the case at bar. The cases cited by the City in support of this argument deal with federal statutes different in character from the Wage Act.

<u>See</u> Pls.' Attorney's Fees & Costs, Ex. 1, Michelle Smith, CPA Invoices, ECF No. 276-8.  The Plaintiffs, however, have provided no evidence that this fee is reasonable and have not attached a breakdown of how the hours invoiced by Michelle Smith were expended.  Having not met their burden fully, the Plaintiffs are awarded two-thirds of their requested expert fees or **$23,062.50** for Certified Public Accountant, Michelle Smith.

Therefore, **$216,977.50 in fees & costs** shall be awarded to the Plaintiffs in total.

**SO ORDERED.**

/s/ William G. Young<br>
WILLIAM G. YOUNG<br>
DISTRICT JUDGE

**APPENDIX I**

| Last Name | First Name | EE ID | Lost Wages | Trebled | Interest |
|---|---|---|---|---|---|
| AMIRAULT | JOHN | 10601 | $30,511.96 | $91,535.88 | $8,536.33 |
| BAILEY | PATRICIA | 10603 | $49,542.40 | $148,627.20 | $15,861.61 |
| BARTHELMES | RICHARD | 10604 | $34,342.00 | $103,026.00 | $11,205.27 |
| BELLAVIA | STEPHEN | 10605 | $72,058.83 | $216,176.50 | $22,965.90 |
| BELLAVIA | STEPHEN C | 14516 | $38,720.21 | $116,160.64 | $12,696.13 |
| BORGES | AYRTON | 15597 | $25,043.40 | $75,130.20 | $7,828.51 |
| BOURQUE | DANIEL | 13485 | $18,508.89 | $55,526.67 | $6,468.37 |
| BOWIE-PIERCE | NOELLE | 15600 | $3,376.97 | $10,130.90 | $1,142.33 |
| CALHOUN | TYLER | 12822 | $32,896.47 | $98,689.40 | $10,799.98 |
| CARLIN | CAROLE | 10609 | $4,539.45 | $13,618.34 | $1,516.43 |
| CARROLL | SCOTT | 10610 | $30,423.54 | $91,270.62 | $9,884.67 |
| CASALETTO | MICHAEL | 10611 | $24,861.97 | $74,585.92 | $8,013.66 |
| CASELLA | JAMES | 10612 | $8,868.28 | $26,604.86 | $2,932.55 |
| CATANA | DANNY | 10618 | $60,072.26 | $180,216.78 | $19,497.01 |
| CENTORE (F. MURPHY) | KATELYN | 14513 | $10,075.36 | $30,226.09 | $3,441.17 |
| CHARPENTIER | ALISON | 10668 | $806.70 | $2,420.09 | $280.14 |
| CHEN | ANDY | 12903 | $2,865.20 | $8,595.60 | $541.31 |
| CHOI | EDMUND | 10613 | $9,378.77 | $28,136.30 | $3,041.36 |
| CLEMENTE | ROBERT | 10620 | $20,441.68 | $61,325.03 | $7,055.99 |
| CLOHERTY | CONOR | 14451 | $11,475.32 | $34,425.96 | $3,752.32 |
| CO | KEVIN | 10614 | $11,733.16 | $35,199.48 | $3,946.29 |
| CONNELLY | DAVID | 14511 | $17,995.89 | $53,987.67 | $6,098.46 |
| CORREALE | RICHARD | 10622 | $26,368.46 | $79,105.37 | $8,743.09 |
| COX | NICHOLAS | 10623 | $30,571.84 | $91,715.52 | $10,179.85 |
| CRANNELL | JON | 16275 | $18,701.13 | $56,103.40 | $6,447.79 |
| DADAILLE | SANDROFF | 15990 | $4,673.56 | $14,020.69 | $1,226.67 |
| DELANEY | JOHN | 10628 | $5,506.69 | $16,520.07 | $1,926.24 |
| D'ENTREMONT | CORY | 13650 | $9,697.20 | $29,091.60 | $3,392.08 |
| DICARLO | CAMERON | 15359 | $3,888.70 | $11,666.11 | $1,325.81 |
| DILLON | SHAWN | 14860 | $14,594.41 | $43,783.23 | $3,806.14 |
| DISALVATORE | ROBERT | 10631 | $6,482.48 | $19,447.44 | $2,267.57 |
| DOHERTY | RICHARD | 14515 | $20,356.62 | $61,069.86 | $6,558.29 |
| DONOVAN | RUSSELL | 10632 | $31,597.93 | $94,793.80 | $10,551.32 |
| DREES | JEFFREY | 10633 | $23,512.68 | $70,538.04 | $7,450.88 |
| FERRICK | KEVIN | 10636 | $27,955.01 | $83,865.03 | $9,397.03 |
| FERRY | BLAKE | 16236 | $3,906.56 | $11,719.68 | $732.15 |
| FITZPATRICK | EDWARD | 10637 | $12,002.45 | $36,007.34 | $4,198.46 |
| FITZPATRICK | STEVEN | 10638 | $63,372.04 | $190,116.13 | $20,625.11 |

| | | | | | |
|---|---|---|---|---|---|
| FORTIER | RYAN | 10639 | $34,112.99 | $102,338.97 | $11,151.88 |
| FRANZESE | DAVID | 10640 | $31,539.47 | $94,618.42 | $10,461.50 |
| FROIO | JASON | 10641 | $46,139.25 | $138,417.76 | $14,809.76 |
| GATCOMB | MARC | 10642 | $32,413.33 | $97,239.99 | $10,633.39 |
| GENNETTI | SALVATORE | 10643 | $38,543.73 | $115,631.19 | $12,501.69 |
| GIORDANO | MICHAEL | 10645 | $52,433.57 | $157,300.72 | $16,307.83 |
| GOMEZ | EVER | 15077 | $24,112.34 | $72,337.03 | $7,441.48 |
| GRENIER | AMANDA | 15612 | $6,476.22 | $19,428.66 | $2,080.16 |
| GRIFFITHS | CHRIS | 10647 | $13,523.79 | $40,571.38 | $4,483.97 |
| HALLORAN | PHILIP | 10649 | $26,978.44 | $80,935.33 | $8,885.77 |
| HASSENFRATZ (F. MCADAM) | JUNE | 10670 | $734.24 | $2,202.72 | $256.84 |
| HEADLEY | TRENT | 10650 | $40,217.79 | $120,653.37 | $12,568.82 |
| HOLLAND | MAUREEN | 10653 | $6,794.77 | $20,384.30 | $2,376.81 |
| HOPKINS | PAUL | 10654 | $84,930.87 | $254,792.62 | $27,851.71 |
| HUSSEY | SEAN | 14666 | $36,894.97 | $110,684.91 | $11,895.76 |
| ISRAELSON | ERIK | 10656 | $43,178.07 | $129,534.22 | $13,639.82 |
| KEEFE | JOSEPH | 15308 | $15,273.15 | $45,819.44 | $4,484.69 |
| KELLEY | JOHN | 10657 | $41,823.11 | $125,469.33 | $13,539.20 |
| KELLEY/NUSUM | RENEE | 10689 | $553.51 | $1,660.53 | $167.52 |
| KILLION | KEVIN | 10658 | $9,256.69 | $27,770.09 | $2,965.47 |
| KINNON | PATRICK | 15373 | $19,554.50 | $58,663.49 | $6,201.42 |
| KRUSCHEWSKY | GUSTAVO | 12819 | $45,434.79 | $136,304.37 | $15,119.73 |
| LAMOUR | JEAN | 13075 | $16,901.56 | $50,704.68 | $5,708.27 |
| LANGSTON | MICHAEL | 10660 | $23,518.36 | $70,555.09 | $7,498.63 |
| LANNI | JOHN | 10661 | $20,775.88 | $62,327.64 | $6,514.63 |
| LAW | KEVIN | 10662 | $29,013.50 | $87,040.49 | $9,525.38 |
| LOPEZ | GEORGE | 14667 | $2,965.82 | $8,897.46 | $1,021.87 |
| LUBINGER | STEVEN | 10666 | $17,566.02 | $52,698.05 | $5,833.95 |
| LUONGO | MICHAEL | 10667 | $28,014.84 | $84,044.53 | $9,071.57 |
| MACDONALD | MARGARET | 10674 | $44,961.52 | $134,884.57 | $14,790.95 |
| MACKAY | GEORGE | 10675 | $57,675.34 | $173,026.01 | $18,734.75 |
| MAHER | ADAM | 14517 | $7,003.23 | $21,009.71 | $2,206.55 |
| MANN | SCOTT | 10676 | $22,738.41 | $68,215.21 | $7,232.87 |
| MANOLIAN | PATRICK | 12787 | $42,957.74 | $128,873.22 | $13,821.76 |
| MARTINEZ | JOSEPH | 16237 | $1,339.74 | $4,019.22 | $254.07 |
| MCGAHEY | LAWRENCE | 10671 | $14,611.76 | $43,835.27 | $5,089.77 |
| MCKENNA | KEVIN | 10672 | $32,414.58 | $97,243.73 | $10,589.82 |
| MCLEOD | PAUL | 10673 | $28,013.97 | $84,041.92 | $9,239.73 |
| MCNEAL | ELIJAH | 14838 | $37,528.42 | $112,585.28 | $12,042.71 |
| MEDEIROS | JOHN | 10679 | $4,028.81 | $12,086.44 | $1,380.27 |

| MITCHELL | PETER | 10678 | $15,098.93 | $45,296.78 | $4,871.52 |
|---|---|---|---|---|---|
| MONTINA | MICHELET | 10682 | $23,335.96 | $70,007.89 | $7,723.30 |
| MONTOYA | JESUS | 10681 | $23,560.47 | $70,681.42 | $7,599.39 |
| MULCAHY | STEVEN | 10730 | $16,947.44 | $50,842.31 | $5,641.60 |
| MUNYON | STEPHEN | 14450 | $8,928.43 | $26,785.28 | $2,943.87 |
| NEWNAN | BRIAN | 10688 | $14,798.90 | $44,396.68 | $5,176.65 |
| NOBLE | STEPHEN | 10687 | $21,956.93 | $65,870.80 | $7,477.31 |
| O'BRIEN | ROBERT | 10691 | $6,396.77 | $19,190.32 | $2,148.02 |
| OWENS | JACK | 10692 | $25,681.63 | $77,044.90 | $8,310.99 |
| PACI | SALVATORE | 14120 | $22,679.51 | $68,038.54 | $7,199.76 |
| POLSTON | MICHAEL | 10694 | $10,278.10 | $30,834.29 | $3,424.57 |
| POWELL | MICHAEL | 10696 | $17,163.77 | $51,491.30 | $5,883.50 |
| QUINN | MATTHEW | 15076 | $26,111.39 | $78,334.16 | $8,212.42 |
| REDMOND | JOSHUA | 14668 | $24,172.03 | $72,516.09 | $8,237.06 |
| REYNOLDS | JOHN | 10698 | $29,826.63 | $89,479.89 | $9,712.03 |
| ROWE | WILLIAM | 10701 | $12,915.44 | $38,746.33 | $4,105.67 |
| RUSSELL | KEVIN | 16273 | $5,929.25 | $17,787.77 | $1,206.21 |
| SELFRIDGE | CAMERON | 15799 | $27,787.63 | $83,362.88 | $8,471.17 |
| SELFRIDGE | ROBERT | 10705 | $25,679.42 | $77,038.27 | $8,690.22 |
| SHAW | KYLE | 15991 | $16,772.23 | $50,316.68 | $4,462.68 |
| SHERIDAN | KEVIN | 10706 | $12,074.21 | $36,222.63 | $4,222.58 |
| SIEGEL | ADAM | 14514 | $26,030.39 | $78,091.16 | $8,709.87 |
| SYLVA | DANIEL | 15372 | $4,854.52 | $14,563.58 | $944.14 |
| TILLEY | BRIAN | 10712 | $28,492.78 | $85,478.35 | $9,072.49 |
| TUXBURY | EVAN | 10714 | $22,298.16 | $66,894.47 | $7,515.74 |
| WADLAND | ROBERT | 10716 | $30,214.38 | $90,643.13 | $9,486.22 |
| WALKER | JOSEPH | 10717 | $42,381.64 | $127,144.91 | $13,207.79 |
| WASHINGTON | CHARLES | 15143 | $9,455.19 | $28,365.56 | $3,140.27 |
| WATKINS | KENNETH | 14857 | $29,163.70 | $87,491.11 | $9,044.80 |
| WILSON | KEITH | 10718 | $6,074.13 | $18,222.40 | $1,836.04 |
| YANOVITCH (F. SELFRIDGE) | AMANDA | 16012 | $1,098.58 | $3,295.74 | $225.85 |
| YUNG | DAVID | 14045 | $20,104.30 | $60,312.91 | $6,935.06 |
| **TOTAL** | | | **$2,512,938.4** | **$7,538,815.28** | **$812,555.82** |

[14]